## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JACQUELINE WEST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00531 (HHK) |
| | ) | |
| JOHN POTTER, | ) | |
| Postmaster General | ) | |
| United States Postal Service | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c), Defendant hereby moves to dismiss or, in the alternative, for summary judgment. In support of the said Motion, Defendant refers the Court to the attached Memorandum of Points and Authorities in Support thereof, the Statement of Material Facts Not in Genuine Dispute, and the accompanying declarations and exhibits.

Dated: September 20, 2006.                    Respectfully Submitted,


                                               __/s/___Kenneth L. Wainstein_____
                                               KENNETH L. WAINSTEIN, D.C. BAR #451058
                                               United States Attorney


                                               __/s/___Rudolph Contreras_____
                                               RUDOLPH CONTRERAS, D.C. BAR #434122
                                               Assistant United States Attorney

1

_____ /s/   John C. Truong_____
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                         |     |                                      |
|-----------------------------------------|-----|--------------------------------------|
|                                         | )   |                                      |
| JACQUELINE WEST,                        | )   |                                      |
|                                         | )   |                                      |
|     Plaintiff       | )   |                                      |
|                                         | )   |                                      |
|     v.              | )   | Civil Action No. 06-00531 (HHK)      |
|                                         | )   |                                      |
| JOHN POTTER,                            | )   |                                      |
| Postmaster General                      | )   |                                      |
| United States Postal Service            | )   |                                      |
|                                         | )   |                                      |
|     Defendant       | )   |                                      |
| _____ | )   |                                      |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I.  Introduction**

    This is not Plaintiff Jacqueline West's first lawsuit against the U.S. Postal Service for discrimination and retaliation.  Her previous lawsuit was dismissed for, *inter alia*, failure to demonstrate an adverse employment action.  See West v. Henderson, No. 99-1975-TFH, slip op. (D.D.C. Nov. 3, 2000) (Gov. Exh. A).  Like Ms. West's previous lawsuit, she similarly fails to show that she suffered an actionable adverse employment action in this case.

    Ms. West's current lawsuit alleges that Defendant discriminated against her because of her sex and age and retaliated against her for her prior EEO activities in violation of Title VII and the ADEA.  Furthermore, although not explicitly mentioned, she appears to claim that Defendant discriminated against her due to her disability (extreme stress and post-traumatic stress disorder) in violation of the Rehabilitation Act.  Her 112-paragraph Complaint raises a

1

panoply of claims;[1] however, her Complaint is subject to dismissal or summary judgment because (1) under the res judicata and collateral estoppel doctrines, Ms. West is estopped from re-litigating claims previously raised in her 1999 lawsuit; (2) some of Ms. West's claims are untimely because she failed to file a complaint with the EEO within 45 days after the alleged discriminatory or retaliatory events; (3) Ms. West failed to exhaust administrative remedies for some of her claims.  Moreover, Ms. West's claims that Defendant breached a settlement agreement lacks merit because there does not exist such an agreement between the parties. Finally, under the law, the Court lacks jurisdiction over Ms. West's claim under Equal Pay Act – to the extent that she raises one.  For these reasons and those explained more fully below, the Court should grant Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, and dismiss this case with prejudice.[2]

## II.    Factual Background

The factual background of this case has been previously set forth in Chief Judge Hogan's Memorandum Opinion dismissing Ms. West's 1999 lawsuit.  See West v. Henderson, No. 99-1975-TFH, slip op. (D.D.C. Nov. 3, 2000) (Gov. Exh.A).  However, a brief recitation of the relevant facts here will provide additional context for the current dispositive motion.  Ms. Jacqueline West worked for the U.S. Postal Service from 1991 to May 31, 2005, when she abruptly left her job and did not return.  See West, slip op. at 1, Declaration of Leonard Adams

---

[1]    Although Ms. West's Complaint contains five separate "Counts," these five counts contain duplicative or overlapping allegations of discrimination and retaliation.

[2]    Ms. West also claims that her action arises under "the common law of the state of Virginia."  Compl. at ¶ 4.  The Court should dismiss claims under "the common law of the state of Virginia" because Title VII provides the exclusive remedy for alleged employment discrimination by the federal government.  See Brown v. GSA, 425 U.S. 820, 828 (1976).

("Adams Decl.") at ¶ 6.

In April 1998, Defendant received information that Michael Edward, a maintenance employee at Curseen & Morris Processing and Distribution Center ("Center"), was potentially homicidal. See Declaration of Ardine Harley (Harley Decl.) at ¶ 5. At the time, Ms. West was a Supervisor of Maintenance Operation (" SMO") at the Center. Id. In an effort to protect her, the Agency detailed Ms. West to the Southern Maryland Processing and Distribution Center. Id. at ¶ 12. Two years later, Ms. West requested a transfer back to the Center as an SMO. Declaration of Louis Higginbotham ("Higginbotham Decl") at ¶ 2 & Exh. 1). Ms. West's request indicated that more than a year had passed and the reason for the reassignment (i.e. the potentially homicidal employee) "is a moot issue." Id.

When Ms. West initially returned to Center, she was not required to supervise employees because she was "above complement"[3] and all the slots for maintenance SMOs were encumbered. Higginbotham Decl. at ¶ 4. Mr. Higginbotham noticed that Ms. West was very thorough, detail-oriented and organized. Id. The maintenance organization needed someone with Ms. West's skills and she also expressed an interest in performing administrative duties. Id. As a result, Mr. Higginbotham assigned her to perform administrative duties such as attendance control and assist supervisors in writing disciplinary letters and the Agency's position statements for Step 2 grievances. Id. These duties were also performed by other employees from Levels 17-19. Higginbotham Decl. at ¶ 5.

---

[3] The "complement" at the Postal Service is the number of positions officially authorized for a particular organization or job title. When Ms. West returned to the Center she was not immediately needed as a supervisor because she was "above complement." (Higginbotham Dec. ¶ 4).

In October 2001, due to the anthrax contamination of the Center (a/k/a Brentwood Branch), all of the employees at the Center were reassigned throughout the Washington, D.C. Metropolitan Area. Higginbotham Decl. at ¶ 6. As a result, Ms. West was temporarily assigned to the Calvert Delivery and Distribution Center and she continued performing her administrative duties. Id. However, Mr. Steven Mummendey became her supervisor. See Declaration of Steven Mummendey ("Mummendey Decl.") at ¶ 3. At that time, Ms. West also took on other duties such attendance control. Mummendey Decl. at ¶ 4.

In late 2003, all employees (including Ms. West) returned to the Center. Declaration of Leonard Adams ("Adams Decl.") at ¶ 4. After her return to the Center, Ms. West's attendance control function was returned to the individuals supervisors and the Labor Relations Department took over the drafting of disciplinary actions and agency positions in Step 2 grievances. (Id.). Accordingly, upon the return to the Center in 2003, Ms. West was assigned the duties of making travel arrangement for employees and managing a job bidding system for craft employees. Adams Decl. at ¶ 4. At this time, Mr. Adams became Ms. West's supervisor. Adams Decl. at ¶ 2.

Prior to Ms. West assuming the management of the job bidding system, Mr. Mummendey used to perform this function. Mummendey Decl. at ¶ 4. He gave up this duty when he was promoted to a Level 23. However, after Ms. West stopped coming to work at the end of May 2005, Mr. Mummendey resumed this responsibility.

In early 2005, another maintenance supervisor, Mr. Derrick Coleman left the Center. Adams Decl. at ¶ 5. At that time, it became imperative that Ms. West return to her duties of supervising maintenance employees because there was a shortage of supervisors. Id. Also, her

administrative duties had been absorbed by others.  Id.  Mr. Adams informed Ms. West on May

18, 2005, of this potential change.  Adams Decl. at ¶ 6.  However, before the reassignment took

effect, on May 31, 2005, Ms. West left her job and never returned to work.  Adams Decl. at ¶ 6;

Mummendey Decl. at ¶ 9.  The time and attendance records indicate that in the remainder of the

pay period immediately following Ms. West's departure, she was charged 66 hours of annual

leave from June 1-10, 2005.  Mummedey Decl. at ¶ 10 & Exh. 1.  She was not charged any other

type of leave during the remainder of this pay period, *i.e.* June 1-10. 2005.  Id.

     Ms. West filed a formal EEO complaint in July 2005 (Gov. Exh. D) and filed this lawsuit

in March 2006.

### III.  Standard of Review

**A.**    **Motion to Dismiss Standard**.

     In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the

complaint's factual allegations as true and draw all reasonable inferences therefrom in the

plaintiff's favor.  Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d 85,

91 (D.D.C. 2004).  Therefore, the complaint will be dismissed if the plaintiff can prove no set of

facts in support of his claim that would entitle him to relief.  Id.  Finally, while "many well-

pleaded complaints are conclusory, the court need not accept as true inferences unsupported by

facts set out in the complaint or legal conclusions cast as factual allegations."  Id.

**B.**    **Motion for Summary Judgment Standard.**

     Summary judgment is appropriate when the record shows that no genuine issue exists as

to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997). Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of

an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV.  Argument

**A.    Most of Ms. West's Claims from 1997 through 1999 Were Previously Litigated and Dismissed**.

On July 21, 1999, Ms. West filed a Title VII lawsuit alleging sex discrimination and retaliation.  See West v. Henderson, No. 99-1975-TFH, slip op. (D.D.C. Nov. 3, 2000) (Gov. Exh.A).  In granting defendant's motion for summary judgment, Chief Judge Hogan held that Ms. West failed to exhaust administrative remedies for certain claims and failed to demonstrate an actionable adverse personnel action for her remaining claims.  See West, slip op. at 7-16.  Chief Judge Hogan then dismissed Ms. West's 1999 complaint with prejudice.  Id.   The D.C. Circuit subsequently summarily affirmed the dismissal.  See West v. Henderson, 2001 WL 1029150 (D.C. Cir. Aug. 28, 2001) (Gov. Exh. C).

Undeterred by Chief Judge Hogan's dismissal of her 1999 complaint, Ms. West raises those same allegations in her current lawsuit.  The following allegations are in both her previously dismissed 1999 complaint and in her current 2006 Complaint: (1) in January 1997, Ms. West's supervisor, Mr. Leonard Adams "undermined her supervisory authority" by resolving a grievance that one of her subordinates had filed with the Union (Compl. at ¶ 56; West, slip op. at 10-11); (2)  in February 1997, Ms. West's work assignment was changed and was required to work weekends (Compl. at ¶ 25, 58-60, 76; West, slip op. at 10-11); (3) Ms. West was not evaluated at her request (Compl. at ¶ 55, West, slip op. at 10); (4) in April 1997, Defendant gave Ms. West an "unsuccessful" rating for the mid-year performance review (Compl. at ¶ 51, 99-100; West, slip op. at 11); (5) in April 1997, Mr. Adams allegedly made a statement,

which Ms. West alleged referred to her, that he was "going to get those bitches" (Compl. at ¶ 24, 52, 101; West, slip op. at 11); (6) in May 1997, Ms. West "felt threatened" by a caricature posted by an unknown individual related to her management style (Compl. at ¶ 48, 97, West, slip op. at 11); (7) in October 1997, Mr. Adams gave Ms. West an "unsuccessful" rating (Compl. at ¶ 48, 50, 68, 96, 98-99; West, slip op. at 11);[4] and (8) Ms. West was transferred to the Southern Maryland Post Office (Compl. at ¶ 46, 95; West, slip op. at 11).

Chief Judge Hogan also dismissed several of Ms. West's claims for failure to exhaust administrative remedies.  Ms. West, however, raises those same claims in her 2006 Complaint: (1) Ms. West was not permitted to work six days a week (Compl. at ¶ 57, West, slip op. at 7); and (2) Ms. West was not selected for certain promotions (Compl. at ¶ 69, West, slip op. at 7). Under either the doctrine of res judicata or collateral estoppel, Ms. West is estopped from re-litigating issues that Chief Judge Hogan previously considered and dismissed.

Res judicata "bars relitigation not only of matters determined in a previous litigation but also ones that a party could have raised."  NRDC v. Thomas, 838 F.2d 1224, 1252 (D.C. Cir. 1988).  Collateral estoppel further bars parties from relitigating issues of law or fact resolved in prior cases between those parties.  Securities Indus. Ass'n v. Bd. of Governors, 900 F.2d 360, 363 (D.C. Cir. 1990) ("When a court determines an issue of fact or law that is actually litigated and necessary to its judgment, that conclusion binds the same parties in a subsequent action.").

Here, as shown above, a number of Ms. West's allegations of discrimination or retaliation were previously litigated and rejected by Chief Judge Hogan.  The D.C. Circuit

---

[4]      Mr. Adams gave Ms. West an "unsuccessful" rating at both the mid-year (April 1997) and year-end (October 1997) performance review.  West, slip op. at 11.

summarily affirmed the dismissal. Therefore, under either doctrine, the Court should dismiss those claims as previously litigated.

**B.    Unexhausted and Untimely Filed Claims.**

As for Ms. West's remaining claims, she either failed to exhaust administrative remedies or untimely filed her administrative complaint. Under the law, these claims must be dismissed.

Federal employees may file a civil action only after exhausting their administrative remedies before the concerned Federal agency. 42 U.S.C. § 2000e-16(c). Under the rulemaking authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).

The EEOC's regulations provide that "aggrieved" employees or applicants for employment who allege they have been discriminated against must first consult an agency EEO counselor before filing a complaint of discrimination and must do so within 45 days of the "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved through informal counseling, the aggrieved employee must, within 15 days, file a written complaint with the agency that allegedly discriminated against him. 29 C.F.R. § 1614.106(a)-(c). The agency must investigate the matter within 180 days or reject the complaint and issue a final dismissal. Id. at §§ 1614.106(e) and .108(e). At the conclusion

9

of the agency's investigation, the complainant may request a hearing before an EEOC

administrative judge or an immediate final decision by the agency.  Id. at § 1614.108(f).

    A complainant who receives an adverse final decision from the agency may appeal that

decision to the EEOC within 30 days, or may file a civil action within 90 days.  42 U.S.C.

2000e-16(c); 29 C.F.R. 1614.407; see also Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996); Holley

v. Dep't of Veterans Affairs, 165 F.3d 244, 246 (3d Cir. 1999).  A complainant also may file a

civil action at any time after a complaint has been pending before the agency or the EEOC for at

least 180 days.  42 U.S.C. 2000e-16(c); 29 C.F.R. 1614.407.

    Compliance with these procedures and time lines is mandatory.  "Complainants must

timely exhaust these administrative remedies before bringing their claims to court."  Bowden,

106 F.3d at 437; Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely

administrative charge is a prerequisite to initiation of a Title VII action").  As the Supreme Court

stated in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "'strict adherence to the

procedural requirements specified by the legislature is the best guarantee of evenhanded

administration of the law.'"  536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807,

825, 100 S. Ct. 2486, 2497 (1980)).

    The requirement that an aggrieved employee initially seek relief from the agency by

exhausting administrative remedies is not a mere technicality.  See Park v. Howard Univ., 71

F.3d 904, 907 (D.C. Cir. 1995).  Rather, "it is part and parcel of the congressional design to vest

in the federal agencies and officials engaged in hiring and promoting personnel 'primary

responsibility' for maintaining nondiscrimination in employment."  Kizas v. Webster, 707 F.2d

524, 544 (D.C. Cir. 1983).  Thus, exhaustion serves the important functions of providing notice

10

to the agency, allowing prompt adjudication and a narrowing of issues, and giving federal agencies the chance to handle matters internally to the maximum extent possible.  See Park, 71 F.2d at 907.

In this case,  Ms. West did not complain at the administrative level that Defendant somehow discriminated or retaliated against her based on her gender, age, or disability when Defendant allegedly did not provide her with a copy of her work performance evaluation.  See Compl. at ¶ 96.  Therefore, under the law, Ms. West cannot bring this claim for the first time in federal court.[5]

Moreover, Ms. West failed to timely raise the following allegations within 45days after the alleged discrimination and retaliation occurred.[6]  See Compl. at ¶ 38-45, 67-69, and 87-94.[7]

_____

[5]        Even assuming that she did exhaust this claim, under the law, Defendant's failure to provide her with a copy of her performance evaluation – within the context of discrimination – was not an adverse personnel action.  See Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (holding that to show an adverse personnel action a plaintiff must show some material adverse employment action that involved tangible economic effect).  In a retaliation context, Ms. West must produce credible evidence that would permit a reasonable jury to conclude that Defendant's failure to give her a copy of the performance evaluation was "materially adverse to a reasonable employee."  .  Burlington Northern and Sante Fe Railroad Co. v. White, 126 S. Ct. 2405, 2414-15 (U.S. 2006).  This Ms. West cannot do.

The Supreme Court has recently held that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm."  Id. at 2415.  A plaintiff must show that "a reasonable employee would have found the challenged action is materially adverse, 'which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. at 2415 (citing Rochan, 438 F. 3d at 1219 (quoting Washington v. Illinois Dept. Of Revenue, 420 F. 2d 658, 662 (7th Cir. 2005)).  The Supreme Court emphasized the need for "material adversity" because "it is important to separate significant from trivial harms."  Id.  Here, Defendant's alleged failure to give Ms. West a copy of the 2005 performance evaluation does not rise to the level of "material adversity" under Burlington.

[6]        It appears that the only "timely" claim in Ms. West's Complaint is her allegation that Defendant removed her name from her office and informed other employees that she was on

Specifically, Ms. West did not contact an EEO Counselor until June 27, 2005, (i) more than

seven years after her supervisor gave her an "unacceptable" rating that caused her to lose about

$1,500 (Complaint at ¶ 68); (ii) six years after she was allegedly charged 24 hours of AWOL in

December 1998 (Complaint at ¶  45, 94);(iii) more than six years after she was allegedly

threatened with a termination on February 5, 1999 (Complaint ¶¶ 44, 93); (iv) more than 4 years

after Mr. Adams allegedly voiced his negative response to parking arrangements and announced

he would tow Ms. West's car in 2000 (Complaint ¶¶ 43, 92); (v) 545 days after Ms. West was

accused of taking a folder from Mr. Adams' office in December 2003 (Complaint ¶¶ 42, 90, 91);

(vi) 423 days after an incident in April 2004 when supervisors were given a key to the facility

and Ms. West was not (Complaint ¶¶ 41, 89); (vii) 179 days after Ms. West was allegedly denied

a promotion in November or December 2004 (Complaint ¶¶ 67, 69); (viii) 66 days after Ms.

West was allegedly not allowed to attend an employee sponsored bone-marrow volunteer drive

---

sick leave after she left her job on May 31, 2006.  Compl. at ¶ 63, 104.  Under the law, Ms. West
cannot demonstrate a prima facie case for discrimination or retaliation for failure to show that
she suffered any adverse personnel action.  See Brody,199 F.3d at 452 (requiring tangible harm
in a discrimination context); Burlington, 126 S.Ct. at 2414-15 (requiring "material adversity" in
a retaliation context).  Indeed, Ms. West left her job voluntarily on May 31, 2005, and has not
returned to work since that departure.  Under these facts, Defendant's conduct had no effect
whatsoever on her employment status.  Therefore, Ms. West cannot show that she suffered any
materially adverse action.

   [7]    The ADEA provides two routes by which a claim of age discrimination may be
brought against a federal agency.  A federal employee may invoke an administrative process and
then file a civil action if she is not satisfied with her administrative remedies.  See 29 U.S.C. §
633a(b).  Alternatively, the employee may elect to forego that administrative process and
present her claim directly to a United States district court.  See 29 U.S.C. § 633a(c); Lex K.
Larson, 8 Employment Discrimination (2d ed.) § 140.08, at 140-32 (1998).  If a federal
employee pursues the first route, as Ms. West did here, then the employee must file a complaint
within 45 days of the alleged discriminatory or retaliatory act.  See 29 C.F.R. § 1614.105(a)-(b).
Here, Ms. West chose the first route but she failed to file a complaint within the 45-day time
period.

(Complaint ¶¶ 40, 88); and (ix) 54 days after becoming aware on May 4, 2005, that she was considered for a transfer to Southern Maryland (Complaint ¶¶ 38, 39, 87).[8]

Under these facts, Ms. West simply did not raise of any of these claims within the 45-day period required under 29 C.F.R. § 1614.105(a)(1).  Accordingly, the Court should dismiss these claims as time barred.[9]

**C.    Count I:  Hostile Work Environment.**

Ms. West conclusorily alleges that she was "harassed" because of her sex, age, and disability.  Compl. at ¶ 30.  Ms. West then catalogues 34 separate allegations of "harassment" dating back to 1996.  However, taken individually or together, these allegations do not rise to the level of hostile work environment under the law.

For the workplace environment to become hostile for purposes of Title VII and merits legal relief, the offensive conduct must permeate "the workplace with discriminatory intimidation, ridicule, and insult that is <u>sufficiently severe or pervasive</u> to alter the condition of the victim's employment and create an abusive working environment."  <u>Lester v. Natsios</u>, 290 F. Supp.2d 11, 22 (D.D.C. 2003) (internal quotations and citations omitted) (emphasis added).  In <u>Faragher v. Boca Raton</u>, the Supreme Court specifically stated that "[the] standard for judging

---

[8]    Ms. West left her job on May 31, 2005 and, therefore, Defendant never transferred her to any other job.

[9]    The 45-day time requirement is not jurisdictional, but operates like a statute of limitations.  <u>See</u> <u>Bayer v. U.S. Department of Treasury</u>, 956 F.2d 330, 332 (D.C. Cir. 1992); <u>Gilmore v. Reno</u>, 33 F. Supp. 2d 20, 24 (D.D.C. 1998).  Plaintiff bears the burden of pleading and proving equitable reasons for any failure to comply with the 45 day requirement.  <u>Bayer</u>, 956 F.2d at 333.  Here, Ms. West's 112-paragraph Complaint fails to provide a single reason that would excuse her failure to file these claims within the 45-day period.

hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'  Properly applied, this will filter out complaints attacking 'the ordinary tribulation of the workplace,' such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."  524 U.S. 775, 787-88 (1998).  Viewed under this demanding standard, Ms. West's allegations do not rise to the level of hostile work environment.

Ms. West's complaints amount to nothing more than ordinary tribulation of the workplace.  For instance, she claims that her supervisor made her "supervise an unusually large amount of employees."  Compl. at ¶ 32.  Ms. West also complains that her supervisor made her perform "administrative work normally handled by employees of higher pay levels."  Compl. at ¶ 37.  She also contends that it was harassment when her supervisor did not allow her to attend a bone-marrow volunteer drive.  Compl. at ¶ 40.[10]  Ms. West also complains that her supervisor did not give her a key.  Compl. at ¶ 41.  She claims that one of her supervisors threatened her by saying he was "going to get that bitch."  Compl. at ¶ 52.[11]  Ms. West also claims that, on May 31, 2005, her supervisor did not approve her request for a four-hour personal leave.  Compl. at ¶ 61.  Apparently, Ms. West left work anyway, without permission, and has not returned to work since May 31, 2006.  Adams Decl. at ¶ 6.

These allegations are only a sample of Ms. West's allegations.  Other allegations are even more trivial than the claims described above.  Under the circumstances, these actions, viewed

---

[10]    This allegation is simply inaccurate.  Her supervisor allowed Ms. West to attend the bone-marrow drive but did not allow her to remain at the event after the program concluded.  Adams Decl. at ¶ 14.

[11]    As discussed *supra*, Chief Judge Hogan rejected this particular allegation for failure to demonstrate an adverse personnel action under Title VII.  See West, slip op. at 13.

14

individually or collectively, are just the "ordinary tribulations of the workplace." Faragher, 524

U.S. at 787-88. More importantly, there are no allegations that Defendant's actions were the

result of discriminatory animus against Ms. West due to her sex, age, or disability. Lester, 290

F. Supp.2d at 22 (noting that "it must be clear that the hostile work environment was the result of

discrimination based on a protected status."). Without more, the allegations in Count II (Compl.

at ¶ 31-63) simply fail to allege a prima facie case for a hostile work environment claim and,

therefore, should be dismissed.

**D.    Count II:    Denial of Advancement Opportunities**

Ms. West alleges that Defendant denied her "advancement opportunities" because of her

sex, age, retaliation, and disability. See Count II (Compl. at ¶ 66-69). As discussed in Section

IV(B) *supra*, these claims were untimely because Ms. West did not raise them with an EEO

counselor within 45 days after Defendant's alleged denial of her "advancement opportunities.

See Compl. at ¶ 67 (in November 2004, Defendant did not select her for a position); ¶ 68 (on

October 10, 1997, Ms. West's supervisor gave her an "unacceptable" rating);[12] and ¶ 69

(Defendant denied Ms. West's several applications for various positions). See Section IV(B)

*supra*. Interestingly, Ms. West fails to identify the positions for which she applied but was not

selected. The Court, therefore, should dismiss Ms. West's Count II as untimely.

**E.    Count III:    Denial of Reasonable Accommodation.**

Ms. West claims that Defendant denied her reasonable accommodation because

Defendant breached a settlement agreement between the parties. See Count III (Compl. at ¶ 71-

---

[12]    Ms. West's allegation that, in October 1997, her supervisor gave her an
"unacceptable" rating was previously litigated and dismissed by Chief Judge Hogan. See West,
slip op. at 12. See also Section IV(A) *supra*.

15

80). At base, her "denial of reasonable accommodation" claim is a breach of contract claim. As discussed in Section IV(G) *infra*, there does not exist a settlement agreement and, even assuming one exists, the Court does not have jurisdiction over Ms. West's breach of contract claim. See Section IV(G) *infra*.

**F.    Count IV:    Retaliation**

In Count IV, Ms. West sets forth twenty-three allegations of retaliation. However, Ms. West's retaliation claims fail because (1) all alleged retaliatory acts occurring between 1997 and May 4, 2005, were not timely raised at the administrative level; (2) Ms. West cannot demonstrate the causation element of her prima facie case for retaliation because there is a seven-year lapse between her last EEO complaint (filed on June 30, 1998) and the alleged retaliatory conduct in 2005; and (3) Ms. West cannot show that she suffered a materially adverse personnel action under Burlington. For these reasons, the Court should dismiss Ms. West's retaliation claims.

**1.    Untimely Retaliation Claims.**

Ms. West outlines a litany of claims dating back to 1997 alleging that Defendant retaliated against her by taking certain actions against her. Compl. at ¶ 87-101. As discussed in Section IV(B) *supra*, Ms. West's claim from 1997 through May 4, 2005, were untimely for failure to file those claims with an EEO counselor within 45 days for their occurence. See Compl. at ¶ 87-101. Moreover, her claims of retaliation occurring between 1997 and 1999 (Compl. at ¶ 95-101) were previously litigated and Chief Judge Hogan rejected those claims for failure to demonstrate an adverse personnel action. See West, slip op. at 11-16.

**2.    Ms. West's Timely Filed Claims Fail to Satisfy Her Prima Facie Case.**

16

Ms. West alleges several retaliatory acts that occurred post-May 4, 2005. Specifically, she claims that (1) on May 18, 2005, Defendant retaliated against her by allegedly violating a settlement agreement with her (Compl. at ¶ 82-87); (2) on that same date, Defendant retaliated against her by giving her work usually handled by higher-level employees but paying her less in violation of the Equal Pay Act (Compl. at ¶ 85-86); (3) Defendant retaliated against her by not approving her request for personal leave (Compl. at ¶ 102-103); and (4) on May 31, 2005, Defendant removed her name from her office after she left work and informed other employees that she was on sick leave.  Compl. at ¶ 104.

To establish a prima facie case for retaliation, Ms. West must show that (1) she engaged in statutorily protected activity; (2) that she suffered from a materially adverse action; and (3) that a causal connection existed between the two.  See Willingham v. Gonzales, 391 F. Supp.2d 52, 60 (D.D.C. 2005).  Defendant does not dispute that Ms. West can meet the first element of this prima facie case.  Ms. West, however, cannot demonstrate the causation and adverse personnel action elements of her prima facie case.

      **(a)**    **No Causation**.

To establish causation, a plaintiff must pair knowledge with proximity.  This Ms.West cannot do.  In Willingham, the court observed that "'[C]ourts have not established the maximum time lapse between [a] protected Title VII activity and alleged retaliatory actions.'" 391 F. Supp.2d at 61 (citing Brodetski v. Duffey, 141 F.Supp.2d 35, 43 (D.D.C.2001)).  However, the court noted that " when a court is asked to accept mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action as sufficient evidence of causality, the Supreme Court has cautioned that the temporal proximity must be very

17

close." Id. (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149

L.Ed.2d 509 (2001)) (internal quotation marks omitted).  In Willingham, the court found that

"[i]n two of the cases the Supreme Court cited to support this proposition, the circuit courts

rejected delays of less than 4 months as insufficient to establish causation."  Id. (citing See

Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month delay insufficient);

Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month delay insufficient)).  The

court then concluded that it "has often followed a three-month rule to establish causation on the

basis of temporal proximity alone."  Willingham, 391 F. Supp.2d at 61-62 (citing Buggs v.

Powell, 293 F.Supp.2d 135, 148 (D.D.C.2003); Gustave-Schmidt v. Chao, 360 F.Supp.2d 105,

118-19 (D.D.C.2004) (referring to end of three-month window as "outer limit" of "temporal

requirement in a retaliation case")). Ultimately, in Willingham, the court rejected plaintiff's

retaliation claim for failure to establish the temporal proximity element because of a six-month

lapse between plaintiff's EEO activity and defendant's removal of plaintiff – the alleged

retaliatory act.  391 F. Supp.2d at 62.

        In this case, Ms. West's retaliation claims suffer the same fate as in Willingham.  Indeed,

Ms. West filed several EEO complaints throughout her career at the Post Office.  Her latest

"prior" EEO complaint was filed in July 1998.  See Gov. Exh. D.  There is approximately a

seven-year lapse between her 1998 prior EEO complaint and the alleged retaliatory acts in 2005.

Under the law, this gap is too wide to satisfy the temporal proximity element of the prima facie

case.  Therefore, the Court should dismiss Ms. West's retaliation claims on this basis.

        (b)        **No Materially Adverse Action.**

        As discussed *supra*, in a retaliation claim, a plaintiff must produce credible evidence that

would permit a reasonable jury to conclude that the agency's actions are "materially adverse to a reasonable employee." Burlington, 126 S. Ct. at 2414-15. The Supreme Court has recently held that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces injury or harm." Id. at 2415. A plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 2415 (citing Rochan, 438 F. 3d at 1219 (quoting Washington v. Illinois Dept. Of Revenue, 420 F. 2d 658, 662 (7th Cir. 2005)). The Supreme Court emphasized the need for "material adversity" because "it is important to separate significant from trivial harms." Id. This Ms. West cannot do.

Specifically, with regard to her breach of a settlement agreement claim (Compl. at ¶ 82-87), as discussed in Section IV(G) infra, there does not exist an agreement that Defendant allegedly breached. See Section IV(G)(1). Therefore, Ms. West could not have suffered any materially adverse harm as a result of the alleged breach. As for her allegation of receiving less pay for performing higher level duties (Compl. at ¶ 85-86), as discussed in Section IV(H)(2) infra, Ms. West did not perform duties of a higher level employee. She was merely doing the work commensurate to her level. See Section IV(H)(2). Accordingly, Ms. West fails to show that she suffered an adverse employment action.

With regard to Ms. West's allegations that Defendant did not approve her requested leave (Compl. at ¶ 62-63,102-103), her own allegations indicate that she ultimately received the requested leave. Specifically, Ms. West alleges that, on May 27, 2005, Defendant did not approve her request for leave and charged her 32 hours of leave without pay ("LWOP"). See

19

Compl. at ¶ 102-103.  Ms. West then admits that Mr. Mummendey changed all of the 32 LWOP

hours to sick leave.  Compl. at ¶ 103.  As a result, Ms. West was not adversely affected by

Defendant's initial decision denying her requested leave.

Finally, with regard to removing her name from her office after she left work on May 31,

2005, and informing her colleagues of her sick leave (Compl. at ¶ 104), this was nothing more

than a trivial harm, if at all.  It is not disputed that Ms. West left work on May 31, 2005, and did

not return to work since that time.  Adams Decl. at ¶ 6; Mummendey Decl. at ¶ 9.  As a result,

Defendant removed her name from her office and informed others of her leave status.  Without

more, Ms. West has not shown that she actually experienced any material harm as a result of

Defendant's conduct.  Accordingly, the Court should dismiss Ms. West's retaliation claims for

failure to show that she suffered any material adverse personnel action.

**G.    Count V:    Breach of Settlement Agreement**

**1.    There Is No Settlement Agreement.**

Ms. West claims that Defendant breached a settlement agreement that previously

resolved her prior EEO complaint.  See Compl. at ¶ 31-36, 75-79, 82-87, 92-93, 95, and Count V

(Compl. at ¶ 107-111).   However, Ms. West cannot show that there exists a valid settlement

agreement that Defendant allegedly breached.

 According to Ms. West's Complaint, there are three different iterations of this

"settlement agreement."  Specifically, according to Ms. West's Complaint, the "first" settlement

agreement contains the following terms: (1) Ms. West is to keep her current position, days off,

and tour as previously provided including the provisions that Ms. West is not to supervise any

employees; 2) Ms.West's 1997 rating of "unacceptable" is to be changed to "acceptable", and

the money she would have gotten had she received an "acceptable" rating is to be given to her

pro-rata; and (3) Ms. West is to retain her former parking arrangement revoked by Mr. Adams,

which allowed her to park away from employee parking and near the gas pump or compound.

Compl. at ¶ 31.

Later in her Complaint, Ms. West apparently claims that the settlement agreement was

connected to a reasonable accommodation which requires that she (1) not work weekends due to

Mr. Edwards' presence and minimal security at the Post Office during weekends; (2) not have to

park in the employee parking lot; (3) not supervise other employees; and (4) not have a

workstation/office in the general area of Mr. Edwards. Compl. at ¶ at 71-80. Finally, Ms. West

describes a "third" iteration of the settlement agreement which provides – in addition to the

terms set forth in the "first" iteration – that Ms. West would be (1) assigned to a Grade 19 job in

Labor Relations; (2) given attorney fees of $1,500; and (3) granted compensatory damages of

$10,000. Compl. at ¶ 81. Ms. West makes no mention of what consideration, if any, flowed to

the Postal Service as a result of this Agreement. It appears that the "settlement agreement" – in

whatever iteration –  is a figment of Ms. West's imagination. Defendant does not have a

settlement agreement with Ms. West.

In fact, Ms. West admits that a settlement agreement does not exist. On July 28, 2005,

Ms. West's attorney (Mr. Michael Beattie) sent an e-mail to Ms. Claudia Pleasant (an EEO

official), which states:

> The terms of this agreement [the 'EEO agreement'] are outlined in Ms. West's
> complaint. Besides a piece of paper whereon one management official hand-
> wrote the terms, there is no written documentation as to this agreement.
> However, all of its terms have been recognized, executed, followed, and upheld
> over the past 5.5 years – quite a large amount of time – until Mr. Adams joined
> the picture and decided to ignore them. Further research into the matter has

21

> shown that we do, in fact, have separate documentation as to each of the terms the
> Postal Service agreed to in connection with the settlement agreement.  This
> documentation shows that each of the terms were recognized, agreed to, and
> executed.  We are happy to provide copies of such documentation upon request.

See July 28, 2005 Email from Beattie to Pleasant (Gov. Exh. D) (emphasis added); see also July

25, 2005 Letter (Gov. Exh. F).  As the e-mail makes clear, "there is no written documentation"

of any settlement agreement.  Ms. West has not provide any "separate documentation" to show

that such an agreement exists.

     As a matter of law, for Ms. West to prevail on a breach of contract claim, at a minimum,

she must show that there exists a binding settlement agreement between the parties.  See Qualls

v. Rumsfeld, 357 F. Supp.2d 274, 282 (D.D.C. 2005) (noting that "[a] plaintiff states a claim for

breach of contract by alleging 'the existence of a valid and enforceable contract between the

plaintiff and defendant."); Johnson v. Mercedes-Benz, USA, 182 F. Supp.2d 58, 63 (D.D.C.

2002) (noting that a settlement is a contract and, therefore, to claim a breach of contract there

must be a valid and enforceable contract); see also Green v. Small, 2006 WL 148740, at *8

(D.D.C. Jan. 19, 2006) (noting that "a valid and enforceable contract requires both (1) agreement

as to all material terms; and (2) intention of the parties to be bound").   More importantly, under

the EEO regulations, "[a]ny settlement reached shall be in writing and signed by both parties and

shall identify the claims resolved."  28 C.F.R. § 1614.603.

     Here, Mr. Beattie's July 28, 2005 E-mail makes clear that "[b]esides a piece of paper

whereon one management official hand-wrote the terms, there is no written documentation as to

this agreement."  Gov. Exh. E (emphasis added).  Moreover, this "piece of paper" does not meet

the requirements under 29 C.F.R. § 1614.603.  Specifically, there is no evidence that Defendant

and Ms. West (or her representative) "signed" this "piece of paper" or "identif[ied] the  claim

22

resolved." In any event, to date, Ms. West has not provided any documentation to demonstrate that a valid and enforceable settlement agreement exists. Accordingly, Ms. West's breach of the settlement agreement claim fails as a matter of law because there does not exist such a contract.

**2.      Ms. West Fails to Exhaust Administrative Remedies for Her Breach of the Settlement Agreement Claim.**

Even assuming that there was a settlement agreement that Defendant allegedly breached, Ms. West failed to exhaust administrative remedies prior to bringing this claim in federal court.

Under the EEO regulations, [i]f the complainant believes that the agency failed to comply with the terms of the settlement agreement or decision, the complainant <u>shall notify the EEO Director, in writing</u>, of the alleged noncompliance within 30 days of when complainant knew or should have known of the alleged noncompliance." 29 C.F.R. § 1614.504 (emphasis added).

Here, in response to Mr. Beattie's July 28th E-mail, Ms. Pleasant advised Mr. Beattie that he must "write to the Manager, EEO Dispute Resolution, 9201 Edgeworth Drive, Capitol Heights, MD 20790-7606, identifying the EEO Settlement/Agreement and case number that was breached with supportive documentation." <u>See</u> Pleasant's July 28, 2005 E-mail to Mr. Beattie (Gov. Exh. E). To date, Ms. West has not notified the EEO Manager of the alleged breach and, therefore, has not exhausted administrative remedies prior to bringing it in federal court. Accordingly, Ms. West's failure to exhaust this claim provides another basis for the Court to dismiss her breach of the settlement agreement claim.

**3.      The Court Lacks Subject Matter Jurisdiction Over Ms. West's Breach of the Settlement Claim.**

Even assuming that there is a valid and enforceable settlement agreement, under the Tucker Act, Ms. West's breach of contract claim should be brought in the Court of Federal

Claims, not in this Court.

The Tucker Act grants the Court of Federal Claims exclusive jurisdiction for damages regarding settlement agreement for $10,000 or more. 28 U.S.C. § 1491. "A claim for breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act." Hanson v. Norton, 411 F.3d 231, 232 (D.C. Cir. 2005) (holding that "this court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); see also Brown v. United States, 389 F.3d 1296, 1297-98 (D.C. Cir. 2004) (holding that suits against the United States for breach of contract involving damages of more than $10,000 lie exclusively with the Court of Federal Claims); Schaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (holding that "[t]here appears to be no doubt that the Court of Federal Claims could entertain this case under the Tucker Act, for the purpose of which a settlement agreement is considered a contract.").

In Brown, plaintiff sought relief under Title VII alleging that the Department of Agriculture breached the terms of its settlement that resolved plaintiff's EEO administrative claims. 389 F.3d at 1297. The D.C. Circuit noted that in order for plaintiff to either pursue remedies for breach of contract or to seek relief under Title VII, she must first must prove that the agency breached the settlement agreement. Id. The D.C. Circuit then concluded that "because this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims." Id. at 1297-98.

In this case, like the plaintiff in Brown, Ms. West is alleging that Defendant breached a settlement agreement that Defendant had with her by (1) moving her to a supervisory position;

and (2) not providing with reasonable accommodations for her alleged disability.  <u>See</u> Compl. at ¶ 31-31, 75, 82, 107-111.  It appears that Ms. West is seeking $10,000 in compensatory damages, which meets the statutory requirement under the Tucker Act.  <u>See</u> Compl. at ¶ 82(vi).  Ms. West's breach of the settlement agreement claim, therefore, is a straightforward contract claim within the meaning of the Tucker Act and it properly lies with the Court of Federal Claims, not with this Court.  <u>Hanson</u>, 411 F.3d at 232.  Accordingly, the Court should dismiss Ms. West's claim for lack of subject matter jurisdiction.

**H.     Equal Pay Act Claim.**

**1.     The Court Lacks Subject Matter Jurisdiction Over Ms. West's Equal Pay Act Claim**.

Although not specified in her Complaint, Ms. West appears to assert a claim under the Equal Pay Act.  More particular, she alleges that, in May 2005, Mr. Adams asked her to perform administrative work normally handled by employees of higher pay levels.  Compl. at ¶ 85, 86.  Ms. West further claims that Defendant paid her less than those male employees.  Compl. at ¶ 113.  The Court, however, does not have subject matter jurisdiction over Ms. West's Equal Pay Act claim.  Jurisdiction properly lies with the Court of Federal Claims.

There are no procedural prerequisites for a federal employee to file suit under the Equal Pay Act, and no prior notice to the agency involved is required.  Furthermore, in this case, Ms. West has not claimed any specific monetary damages for the Equal Pay Act violations alleged in her Complaint.  Consequently, Defendant does not know the amount of money damages that Ms. West is seeking with respect to the Equal Pay Act violations asserted here.  If, however, as seems likely, Ms. West intends to claim in excess of $10,000 damages, then the Court does not have jurisdiction over Ms. West's claim.

An analysis of this Court's jurisdiction to hear claims under the Equal Pay Act must begin with a recognition of the impact of the doctrine of sovereign immunity:

> It is elementary that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."

United States v. Mitchell, 445 U.S. 535, 538 (1980) (emphasis added) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  Thus, for Ms. West to bring his Equal Pay Act claim in this Court, she must identify the specific waiver of sovereign immunity that applies, and demonstrate that it "defines [this] court's jurisdiction" so as to include his claims.

The Equal Pay Act does not include any jurisdictional grant, nor does it create a private right of action.  29 U.S.C. §206(d).  To find authority for suits to be brought by individuals, Ms. West must look to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., of which the Equal Pay Act is a part.  That statute does permit private rights of action, 29 U.S.C. §216(b), but it does not include a grant of jurisdiction to this or any other court.

In the absence of any grant of jurisdiction in the statute being invoked, the Court's jurisdiction depends on the Tucker Act, 28 U.S.C. § 1346(a)(2), which expressly limits the jurisdiction of this Court to any non-tort "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress." See, e.g., Doe v. Dep't of Justice, 753 F.2d 1092, 1101 (D.C. Cir. 1985).  Accordingly, if Ms. West is seeking in excess of $10,000 here, the Court lacks jurisdiction to adjudicate her claim and the proper Court is the Court of Federal Claims.  See Barnes v. Levitt, 118 F.3d 404, 410 (5th Cir. 1997) (district court lacked jurisdiction over Equal Pay Act claim); Huddleston v. Donovan, 524 F. Supp. 179 (N.D. Ill. 1981) (same); Warren v. Alexander, 21 F.E.P. 664 (N.D.

Ga. 1979) (same).

Even if Ms. West is claiming $10,000 or less on account of the alleged Equal Pay Act violation, the Court should dismiss this action because it was filed in the wrong court. Even if Ms. West's monetary claims were $10,000 or less, thus invoking the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), Ms. West could not maintain her action in this Court. Under the applicable venue provisions for the Little Tucker Act, which allows jurisdiction in federal district court for certain monetary claims of $10,000 or less, a plaintiff may only file suit in the Court of Federal Claims or in the federal district court where the <u>plaintiff resides</u>. <u>See</u> 28 U.S.C. § 1402(a)(1); <u>see also</u> <u>Brooks v. Weinberger</u>, 637 F. Supp. 22 (D.D.C. 1986); <u>Parker v. King</u>, 935 F.2d 1174, 1176 (11th Cir. 1991); <u>Saraco v. Hallett</u>, 831 F. Supp. 1154, 1162-64 (E.D. Pa. 1993), *aff'd* 61 F.3d 863 (Fed. Cir. 1995).

Here, Ms. West does not reside in the District of Columbia but, rather, she resides in Upper Marlboro, Marlynad. <u>See</u> Complaint, Caption. Accordingly, even if Ms. West's Equal Pay Act claims were $10,000 or under, she still could not file suit in this Court and her Equal Pay Act claim – to the extent that she raises one –  must be dismissed.

**2.    Ms. West Cannot Show That She Was Paid Less Than The Male Employees.**

Even assuming that Ms. West has raised a valid Equal Pay Act claim, that claim nevertheless lacks merit because she cannot show that Defendant paid her less than her male counterparts. The Equal Pay Act provides that:

> No employer ... shall discriminate ... on the basis of sex by paying wages to employees at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.

27

29 U.S.C. § 206(d)(1).  The initial burden of proof is on Ms. West to show that the employer has paid different wages to employees of either sex for equal work.  Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974).

Here, the facts show that Ms. West was performing duties at her level and not at a higher level.  In 2001, Ms. West's duty station – the Cureen & Morris Processing and Distribution Center (a/k/a the Brentwood Station) – was closed due to anthrax contamination.  Adams Decl. at ¶ 3.  Thereafter, Ms. West was reassigned to the Calvert Delivery & Distribution Center ("Calvert Center").  Id.  While at the Calvert Center Mr. Adams – Ms. West's former supervisor – assigned her certain administrative duties, including coordinating attendance control and preparing disciplinary actions for employees throughout the Metropolitan Area.  Adams Decl. at ¶ 3.  Ms. West was a Level 17 Supervisor at that time.  Adams Decl. at ¶ 2.  However, Ms. West's assignments were diminished and her duties were returned to other supervisors after Ms. West returned to the Center.  Adams Decl. at ¶ 4.

Subsequently, in December 2003, Mr. Mummendey (another supervisor) assigned Ms. West the responsibility of managing a job bidding system for craft employees.  Mummendey Decl. at ¶ 4.  Mr. Mummendey had this responsibility prior to his promotion to a Level 23 employee.   Mummendey Decl. at ¶ 4.  In fact, other lower level employees, including those at the Level 5 or 6 were also managing the job bidding system.  Mummendey Decl. at ¶ 6.  When Ms. West left her job at the end of May 2005, Mr. Mummendey resumed the responsibility of managing the job bidding system.  Mummendey Decl. at ¶ 4.

Under these facts, there is no evidence showing that Ms. West at any time performed duties above her grade level and did not receive commensurate compensation for her work.

Therefore, without more, Ms. West cannot show that Defendant did not give her equal pay for performing high level duties.  The Court, therefore, should grant summary judgment in Defendant's favor on this claim.

**V. Conclusion**

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, and dismiss this case with prejudice.

Dated:  September 20, 2006.　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　 /s/   Kenneth L. Wainstein
　　　　　　　　　　　　　　　　　　　　KENNETH L. WAINSTEIN, D.C. BAR #451058
　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　 /s/   Rudolph Contreras
　　　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS, D.C. BAR #434122
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　　　　　　 /s/   John C. Truong
　　　　　　　　　　　　　　　　　　　　JOHN C. TRUONG, D.C. BAR #465901
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　555 Fourth Street, N.W.
　　　　　　　　　　　　　　　　　　　　Washington, D.C.  20530
　　　　　　　　　　　　　　　　　　　　(202) 307-0406

　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JACQUELINE WEST,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　)　　　Civil Action No. 06-00531 (HHK)
　　　　　　　　　　　　　　　　　　　　)

JOHN POTTER,                                    )
Postmaster General                              )
United States Postal Service                    )
                                                )
               Defendant                        )
_____)

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR,
### IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Upon consideration of Defendant's Motion to Dismiss or, in the alternative, for Summary

Judgment, Plaintiff's Opposition thereto, and the entire record herein, it is this _____ of ____,

2006,

ORDERED that  Defendant's Motion to Dismiss or, in the alternative, for Summary

Judgment be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

WITH PREJUDICE.

_____
U.S. DISTRICT JUDGE

30