UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE WEST, | : |
| Plaintiff, | : |
| v. | : |
| JOHN E. POTTER, | : Civil Action No. 06-00531 (HHK) |
| Postmaster General, | |
| United States Postal Service, | : |
| Defendant | : |

...oOo...

## DECLARATION OF LEONARD ADAMS

I, Leonard Adams, make the following Declaration in lieu of an affidavit, in accordance with 28 U.S.C. § 1746. I am aware that this Declaration will be filed with the United States District Court for the District of Columbia and that it is the legal equivalent of a statement under oath.

1. I am currently a Manager of Maintenance Operations at the Curseen & Morris Processing and Distribution Center (P&DC) (formerly Brentwood) in Washington, D.C.

2. I was Jacqueline West's manager from December 2003, when employees returned to the P&DC after fumigation from anthrax, until Ms. West left the workplace and did not return in May 2005. Ms. West was a Supervisor of Maintenance Operations (SMO), Level EAS-17.

3. Ms. West was performing administrative duties while she was assigned to the Calvert Delivery & Distribution Center after the closing of the P&DC due to

1

anthrax contamination in 2001. During this time, the P&DC needed Ms. West to coordinate attendance control and disciplinary actions for employees who were then scattered at different facilities throughout the metropolitan area. Ms. West also wrote statements of the Agency's position for Step 2 grievances.

4. The need for Ms. West to assist with administrative duties diminished when we returned to Curseen & Morris P&DC in December 2003. The attendance control function was returned to the individuals supervisors and they were further assisted by a new software application. The labor relations duties of drafting discipline and writing the Agency's position in Step 2 grievances were reabsorbed by the Labor Relations Department. Accordingly, upon our return to the P&DC in 2003, Ms. West was assigned the duties of making travel arrangements for employees. She began managing a job bidding system for craft employees in October 2003.

5. In early 2005, another maintenance supervisor, Derrick Coleman, left the Curseen & Morris P&DC. At that time, it became imperative that Ms. West return to her duties supervising maintenance employees because there was a shortage of supervisors. Also, her administrative duties had been absorbed by others.

6. I informed Ms. West on May 18, 2005, that she would need to resume her supervisory duties. Ms. West left on May 31, 2005 and never returned to work.

7. Before Ms. West was assigned to make travel arrangements for maintenance employees, this task was performed by Ada Sherrill who was a Level 5 Maintenance Control Clerk. Ms. Sherrill was then promoted to a Level 17 SMO, and, when employees moved back into Cureen & Morris after the fumigation, Ms. West and Ms. Sherrill shared the duties of making travel arrangements. Ms. Sherrill then turned this duty over to Ms. West. Immediately after Ms. West left in May 2005, Ada Sherrill, then a Level 17 SMO, resumed making travel arrangements. Later, Anthony D'Souza, Level 19, took over the duty of making the travel arrangements. However, in addition to making the travel arrangements, Mr. D'Souza was placing the employees in training classes. Ms. West did not perform this duty, as she did not have access to the necessary computer program. Currently, Annette Cousar, a Level 6 Maintenance Control Clerk, is making travel arrangements.

8. At no time did Ms. West complain about performing administrative duties or indicate that she should receive higher level pay for performing them.

9. I am unaware of any settlement agreement Ms. West entered into with the Agency.

10. I am aware that Ms. West is alleging that in 1999, she was threatened with termination if she did not transfer to a Tour 3 shift. I am unaware of such a threat. I certainly did not make such a threat. I was not supervising Ms. West at the time, as she was detailed to the Southern Maryland P&DC. At any rate, Ms. West was never terminated.

3

11. I am aware that Ms. West is alleging that in 2000 I voiced a negative response to her parking arrangement and announced that I would tow her car off the official parking lot. I deny these allegations. First, I do not have the authority to have cars towed. In addition, I was working on Tour 1 and Ms. West was working on Tour 2 in 2000, and, as I did not supervise her, or even work with her, I had no reason to get involved with her parking arrangements.

12. I am aware that Ms. West is alleging that in April 2004 I gave keys to all supervisors except her. I do not issue or sign out keys to employees. Ms. West had a key to her office and a badge to enter the building. Other supervisors had a key to the custodians' closets, the stock room and air handler rooms. However, Ms. West did not need the keys to these areas because she was doing administrative duties, she had not yet assumed the full duties of her supervisory position and she had no need to enter these rooms. Nonetheless, there was a master copy of the key at Ms. West's disposal which could be used if she ever needed to enter these rooms.

13. When we moved back to Curseen & Morris P&DC in 2003, Ms. West volunteered to unpack all my boxes and I permitted her to perform this task. Shortly thereafter, I noticed I was missing my supervisory folder on Ms. West. I was never able to relocate the folder. I reported this to the Maintenance Manager at the time, Louis Higginbotham. I asked Ms. West about the folder and she denied any knowledge of its whereabouts. I have no proof that Ms. West took this folder, and she was never accused of having taken the folder or disciplined for having taken it.

14. In April 2005, the P&DC sponsored a bone marrow drive as a diversity activity. I authorized Ms. West to attend the presentation, but I did not authorize her to stay after the program concluded. Other employees returned to work after the program, but Ms. West was not among them. It was reported to me that Ms. West had stayed after the presentation concluded, and that she was serving cake at a reception. I phoned the employee in charge of the bone marrow drive and asked her to ask Ms. West to report back to her job in maintenance. Ms. West brought me four pieces of cake, a T shirt and a bottle of water from the bone marrow drive in an effort to apologize for staying after the program concluded. I asked her not to do this again and she said that she would not.

I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

LEONARD ADAMS
Manager Maintenance Operations
USPS Capital Metro District

Executed on this 19th day of September 2006.