**In the United States District Court**
**for the District of Columbia**

| | |
|---|---|
| Jacqueline West, ) | |
|        Plaintiff ) | |
|   v. ) | Case Number: 06-00531-HHK |
| ) | |
| John Potter, in his official capacity as ) | |
| United States Postmaster General ) | |
| United States Postal Service, ) | |
|        Defendant ) | |

___

**Plaintiff's Opposition in Response to Defendant's Motion to Dismiss**

**1. Plaintiff's Claim**

The sole issue before the court is whether the defendant illegally transferred plaintiff into a new position. The transfer was illegal because: (1) the transfer placed her into a hostile work environment where she would be required to come into daily contact with a man who previously attempted to murder her, (2) the transfer cancelled reasonable accommodations guaranteed under the Rehabilitation Act, (3) the transfer was based upon her disability, and (4) the transfer breached a prior settlement of equal employment opportunity complaints. Other factual details listed in the complaint are not claims but merely information to chronologically describe events leading up to the claim and described events leading up to the prior EEO settlement agreement.

**2. Introduction**

Defendant moves to dismiss based upon the absurd suggestion that (1) plaintiff has not suffered an adverse action, (2) plaintiff did not have a settlement agreement, (3) her complaint is untimely. The defendant in fact well knows each of these reason are completely false and is continuing as to discriminate against her to this very day. Currently, defendant will not permit plaintiff to return to work and is currently charging

1

her as AWOL. Despite the fact that her absence falls under an accepted workers compensation claim, defendant will shortly terminate plaintiff's employment, because of the false assertion that plaintiff has been AWOL. Not only does the defendant's human resources currently ignore Mrs. West's written requests for a reasonable accommodation, but when counsel for plaintiff made counsel for defendant aware of the currently outstanding reasonable accommodation requests, the agency did not as of today even deign to respond. Defendant has a pattern over many years of hostility towards people with disabilities and has such contempt for them that the agency does not even bother to respond to written communications from cripples. This is not simply a case where the agency did not tell its own counsel about accommodation requests and retaliation. Rather, counsel for plaintiff told counsel for defendant in writing and verbally about the current discrimination occurring today, and counsel for defendant made a conscious decision to mislead the court into thinking the complaint was untimely. Furthermore, defendant has retaliated against plaintiff for filing this lawsuit by refusing to permit her to return to work. Therefore, the motion to dismiss must be summarily rebuffed.

**3. Plaintiff's Motion for Leave to Amend**

Plaintiff's original complaint pleads all the elements of a reasonable accommodation and hostile workplace claim. Not only does the lawsuit place defendant on notice of the claim, defendant had prior knowledge about the key facts throughout the administrative EEO process. Despite the sufficiency of the complaint, plaintiff has drafted a first amended complaint and filed a motion seeking leave to file the amended complaint. The amended complaint does not add new allegations. Instead, the amended complaint synthesizes and clarifies the prior suit. Many of the amendments to the suit

are specifically geared to respond to defendant's motion to dismiss. Assuming incorrectly, that the original complaint was deficient, the amended complaint cures any and all defects. The court should rule on the motion to amend, and then deny defendant's motion to dismiss the original complaint without prejudice.

**4. Statement of Facts**

This case arose in 2005 when the defendant reneged on a prior settlement agreement. Prior to the settlement, plaintiff endured a pattern of harassment over the past decade and the pattern persists to this very day. Her manager berated and yelled at plaintiff each day over a period of years. The harassment culminated when a co-worker stalked plaintiff, threatened to kill her, then tried to run plaintiff's car off the road. Defendant did not regard the death threat, stalking, and attempted murder as particularly serious offenses and did not discipline or investigate the co-workers actions. As a result, plaintiff could not return to work in the hostile environment and instead applied for workers compensation.

Originally, defendant fought plaintiff's workers compensation claim and would not permit her to return to work. Her current counsel represented plaintiff on her workers compensation and the EEO complaints pending in the administrative process in 2000 and 2001. He reached a settlement with an attorney for the United States Postal Service, and management wrote terms of the verbal settlement. As a result of the settlement, defendant cooperated with the processing of the workers compensation claim and accommodated her disability by transferring her to a vacant position at another post office and giving her handicapped parking privileges. In consideration, West dropped all pending EEO charges before the agency and the EEOC.

In the settlement, the parties acknowledged Mrs. West was psychologically unable to work with individuals threatening to kill her, and the parties therefore stipulated the transfer was a necessary accommodation of her disability.

The Postal Service does not make or reject workers compensation claims; however federal agencies can submit information and documents attempting to refute the claim. The United States Department of Labor acts as an impartial fact finder able and willing to make workers compensation determinations over the objections of the affected agency. The Department of Labor concluded that supervisory level employment continually sexually harassed plaintiff over a series of years.   Under principals of the law of the case and collateral estoppel the government cannot now deny a previously disputed factual and legal adjudication by another instrumentality of the same governmental body.  The Department of Labor found as a fact that plaintiff contracted a mental disability (panic and anxiety disorder) as a direct result of factors of employment.   The Department found Mrs. West to be partially disabled meaning that she could not return to her old job, but she could perform other gainful employment in the economy.   Once the Department of Labor classified her as partially disabled and found the disability was attributed to factors of employment, the affected government agency can reasonably accommodate the employee's disability by placing them in a different position or the agency can continue to pay workers compensation.   Due to the prior settlement agreement, the Postal Service opted to place Mrs. West in a new position.

Mrs. West returned to work at a new post office after the 2001 settlement agreement, and she performed admirably in her new position.   However in 2005, the

4

defendant chose to renege on the settlement and place her with the harassing manager and the employee who is still threatening to kill her.

Immediately after defendant transferred plaintiff back to the hostile environment plaintiff immediately went out on workers compensation leave and filed two EEO complaints. The first alleged discriminatory transfer and the second alleged a breach of the 2001 settlement agreement. Plaintiff contacted an EEO counselor immediately after learning of the transfer. Because the agency declined to mediate or take any remedial action, Mrs. West filed a formal complaint. Each of those complaints are now before the court.

In 2005, the Department of Labor approved her workers compensation claim as a reoccurrence of the prior injury. Nevertheless, the Postal Service has declined to implement this decision fully, withheld workers compensation pay, and currently charges plaintiff as AWOL during periods of approved workers compensation leave. Information about the workers compensation is helpful only as background information. This case does not concern her claim for workers compensation benefits, because the Department of Labor has already made two entirely favorable rulings.

Plaintiff previously filed lawsuit in 2000 concerning events prior to 2000, and the court dismissed these complaints as untimely. Plaintiff learned from this prior experience and therefore ensured her current complaints were timely. This civil action includes information about events occurring prior to 2000, because (1) this case deals with retaliation for the prior EEO complaints, (2) explains the reasons plaintiff originally became disabled, (3) helps to show a pattern and practice of discrimination, and (4) is useful to understand the sequence of events leading up to this case. Mrs. West is not

5

seeking damages for events occurring prior to the 2000 court decision. The defendant erects a straw man asking that claims prior to the 2000 court decision be dismissed. Since the prior events do not form the basis of the claim for damages or other relief dismissal of something non-existent would be impossible. To the extent the defendant's motion to dismiss could be reframed as a motion to strike prior allegations, this would be improper because it is highly relevant to her retaliation claim. Proof of prior EEO complaints is an essential element of a retaliation claim. Therefore, deletion of references would highly prejudicial.

When an individual alleges a breach of settlement agreement, the court can either enforce the agreement or reactivate the settled claim and permit the settled cases to proceed forward. Plaintiff did not settle the civil action filed in 2000. Instead, she settled cases pending in the administrative process.

**5. Timeliness of Reasonable Accommodation Claim**

Although well aware that plaintiff has been petitioning for over one year to get reasonable accommodation and counsel for plaintiff notified counsel for defendant that these requests are still currently being ignored and plaintiff has been placed on AWOL status, defendant asks the court to dismiss the case as untimely. Timeliness issues must be made by determining the date of the alleged discriminatory event, the date of EEO counselor contact, and then computing the number of days between the two dates. The statute of limitations has not even begun to run on one of Mrs. West's claims, and there is no factual dispute she made timely EEO contact on the second claim.

**6.     Timeliness of Disparate Treatment Claim**

The complaint claims the defendant discriminated against plaintiff by transferring her into an abusive and life threatening environment. Defendant says plaintiff learned she might be transferred on May 4, 2005 but failed to contact an EEO counselor until June 27, 2005 (54 days after learning of the possible transfer). However, the defendant has always maintained the clock does not begin to run until the date of a final decision. The defendant chose to delegate to the Equal Employment Opportunity Commission the authority to issue regulations for processing federal employee discrimination complaints. Acting on behalf of the defendant the EEOC decided the clock does not begin to run until the date of a "final decision". More importantly, federal employees are specifically prohibited by law from filing an EEO complaint dealing with a proposed personnel action. (See: 29 C.F.R. 1614). The United States Attorney for the District of Columbia is asking this court to issue an order striking down a key provision in the federal government's own regulations. The Postal Service tells the court it does not wish to comply anymore with regulations promulgated for all federal agencies. Even assuming the Postal Service had statutory authority to make such a claim, it is unethical for the United States Attorney to ask the court to invalidate a regulation enforced and promulgated by one of its own clients (EEOC). If defendant were correct that the clock begins to tick once an employee learns of possible personnel actions, a federal agency could avoid ever being charged with discrimination by delaying proposed personnel actions. A federal agency could tell an employee of a possible personnel action and simply wait 60 days to avoid an EEO complaint. The employee would have to file the complaint by the 45th day, but the complaint would automatically be dismissed, because the decision was only a proposed decision. Even if defendant's argument had a scintilla

7

of legal merit, it would yield bizarrely unconscionable consequences and be completely violative of federal public policy.

The complaint states plaintiff did not learn she would definitely be transferred until May 18 (40 days prior to contacting an EEO counselor), but the complaint further states the personnel action would not become effective until June 4, 2005 (23 days prior to contacting the EEO counselor.   The EEOC and federal court have consistently held the clock begins to run from the effective date of the personnel action rather than the publication of the personnel action. *Venita Colbert v. John E. Potter, Postmaster General United States Postal Service*, No. 05-5330, 2006 WL 3687233 (D.C.Cir.)[1].

None of the dates listed by the defendant as being outside the 45 day limit have any bearing this case, because this case concerns only the transfer.   None of the background information about events up to the transfer are claims.   A timeliness question turns on the date "the claim arose".   Since the claim did not arise until June 4, 2005 and plaintiff contacted a counselor within 23 days, there can be little doubt that the complaint was timely.

**7.  Estoppel and Law of the Case**

Throughout the defendant's brief, the Postal Service argues plaintiff "voluntarily" left her position.  However, the Postal Service already unsuccessfully litigated this point. The United States Department of Labor concluded Mrs. West had post-traumatic stress disorder from job related harassment.   After terminating plaintiff's reasonable

---

[1] Under Title VII, USPS employees are required to file lawsuits seeking relief for employment discrimination within 90 days of receipt of notice of final administrative action. 42 U.S.C. § 2000e-16(c). Equal Employment Opportunity Commission ("EEOC") regulations also require a claimant "under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court ... [w]ithin 90 days of receipt of the final action on an individual or class complaint." 29 C.F.R. § 1614.407(a) (2006). *Id*

accommodations, plaintiff requested and won an award to pay wage loss benefits. Over the Postal Services' objection, the Department of Labor concluded she was medically unable to return to work without accommodations due to a job related injury. The defendant's characterization of her failure to come to work as voluntary is absolutely false. Voluntariness requires an individual to make a choice from different options. Mrs. West did not choose to abstain from work but rather her doctor prohibited her from working and the Department of Labor found she was not able to return to work. Under the doctrines of collateral estoppel and the law of the case, the Department of Labor's determination that plaintiff's absence from work was involuntary prevents the agency from re-litigating the issue.

**8. Adverse Act Inapplicable to Reasonable Accommodation Claim**

This case primarily concerns the defendant's withdrawal of reasonable accommodations in June 2005. Previously, defendant agreed plaintiff would not be required to supervise other employees, would be given handicapped parking privileges, and would be given a work schedule that would not require plaintiff to be on duty at the same time as the employee threatening to kill her. However, the statute of limitations does not get to run until the failure to accommodate ends. Mrs. West and her counsel have both made written requests for over one year to have the prior accommodations restored. Throughout the administrative process and continuing until today, the defendant has stubbornly refused to even respond to the accommodation requests.

The term "adverse act" does not apply under a reasonable accommodation frame work of analyzing employment disputes. Courts only use the term adverse act to refer to disparate treatment claims under Title VII and the Rehabilitation Act. Mrs. West

9

proceeds under the reasonable accommodation theory and thus defendant's adverse act defense does not even apply to plaintiff's most important claim.

**9**. **Adverse Act under Disparate Treatment Theory**

Plaintiff's disparate treatment claim is separate and distinct from the reasonable accommodation claim above. Defendant argues that a transfer to a job that plaintiff is physically unable to perform does not amount to an adverse act. Plaintiff contends the defendant's actions not only constitute an adverse act but in fact can be classified as constructive discharge.

The Supreme Court recently conclusively established that defendant's argument is completely without merit. See: *Burlington Northern and Santa Fe Railway v. White Case Number 05-269 U.S. 2006*. The court decided that a reassignment of duties to a less desirable job constitutes an adverse act. Defendant transferred Mrs. West to work on evenings and weekends when building security would be at its lowest level and required her to supervise and have direct contact with a man who previously attempted to murder her. Her doctor opined that Mrs. West could not handle supervisory duties. Thus, there can be little doubt she was transferred into a less favorable position, and the transfer constituted an adverse act.

**10.** **Merits of Reasonable Accommodation Claim**

Just as defendant has cavalierly ignored counsel and plaintiff's numerous reasonable accommodation requests, defendant brief continues in the same vein and brushes off the heart of this civil action. Defendant's motion states that plaintiff's reasonable accommodation claim is synonymous with her breach of settlement claim, and since the settlement agreement claim should be dismissed the reasonable accommodation

10

claim should also be dismissed. Defendant's position has no legal merit and is simply weird.

An employment discrimination claim can be analyzed under many different frameworks such as the disparate impact theory, the McDonald Douglas test, etc. The failure to prove one theory does not preempt other theories. The reasonable accommodation claim and the breach of contract claim are two separate and distinct claims and thus must be analyzed separately, because each of them have different elements. It is quite possible plaintiff could prevail on the reasonable accommodation claim, but lose on the breach of settlement claim. As a reasonable accommodation, plaintiff asked for modified work schedule, an exemption from supervisory duties, and handicapped parking. Plaintiff first contends the defendant's decision to withdraw the accommodation violated the Rehabilitation Act, because the defendant no longer reasonably accommodates her disability. To prove this claim, plaintiff must establish that (1) she has a medical condition, (2) the condition substantially impairs a major life activity, (3) the defendant knew of the disability, (4) she is qualified to perform the essential elements of her job, and (5) her requested accommodation is reasonable. The elements of the breach of settlement claim are completely different. On the other claim, she needs to prove the parties reached an agreement and the defendant materially breached the agreement. A plaintiff could prevail on the breach of settlement claim even if the plaintiff is not actually disabled, because proof of disability is not an element of the claim.

Plaintiff says she settled four EEO complaints pending in 2001. Defendant says the parties did not have a settlement of the four 2001 cases. Defendant further says

plaintiff's 2005 EEO complaint raising new issues should be dismissed, because plaintiff did not settle the earlier and different EEO cases in 2001.   The defendant argues the absence of a prior settlement agreement is an element to a Rehabilitation Act.   No court has ever mentioned this possibility, and defendant's argument is simply ludicrous.

11.   **Conclusion**

For the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

_____
Michael  Beattie
9502 B Lee Highway
Fairfax, VA 22031
(703) 273-2235 Phone
(703) 273-3440 Fax
mjbeattie@verizon.net