# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JACQUELINE WEST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00531 (HHK) |
| | ) | |
| JOHN POTTER, | ) | Next Court Date: N/A |
| Postmaster General | ) | |
| United States Postal Service | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(c), Defendant hereby moves to dismiss or, in the alternative, for summary judgment.  In support of the said Motion, Defendant refers the Court to the attached Memorandum of Points and Authorities in Support thereof, the Statement of Material Facts Not in Genuine Dispute, and the accompanying declarations and exhibits.

Dated: February 22, 2007.                    Respectfully Submitted,


    /s/  Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/   John C. Truong

JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                                   |     |                                   |
|-----------------------------------|-----|-----------------------------------|
| JACQUELINE WEST,                  | )   |                                   |
|                                   | )   |                                   |
| Plaintiff                         | )   |                                   |
|                                   | )   |                                   |
| v.                                | )   | Civil Action No. 06-00531 (HHK)   |
|                                   | )   |                                   |
| JOHN POTTER,                      | )   |                                   |
| Postmaster General                | )   |                                   |
| United States Postal Service      | )   |                                   |
|                                   | )   |                                   |
| Defendant                         | )   |                                   |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

### I. Introduction

This is not Plaintiff Jacqueline West's first lawsuit against the U.S. Postal Service for discrimination and retaliation. Her previous lawsuit was dismissed for, *inter alia*, failure to demonstrate an adverse employment action. See West v. Henderson, No. 99-1975-TFH, slip op. (D.D.C. Nov. 3, 2000) (Gov. Exh. A). Like Ms. West's previous lawsuit, she similarly fails to show that she suffered an actionable materially adverse employment action in this case.

Ms. West's current lawsuit alleges that Defendant discriminated against her because of her race, sex and disability (Post Traumatic Stress Disorder) and retaliated against her for her prior EEO activities in violation of Title VII and the Rehabilitation Act. Her 131-paragraph Amended Complaint boils down to one issue: whether Defendant discriminated and retaliated against her when Defendant proposed to transfer her to a supervisory position and, therefore,

1

changed her work duties, hours, and location.  A.C. at ¶ 69.  However, Ms. West left the agency

on May 31, 2005, before the proposed transfer even took effect.  Therefore, she did not suffer

any adverse employment action as a result of the proposed transfer.

Her Amended Complaint also raises a panoply of claims but they are also subject to

dismissal or summary judgment because (1) most of the claims arise from a fictional settlement

agreement, which she alleged Defendant breached; (2) some of her claims are untimely; and (3)

she failed to exhaust administrative remedies for her remaining claims.  For these reasons and

those shown below, the Court should grant summary judgment in Defendant's favor and dismiss

this case with prejudice.

## II. Background

**A.      Procedural Background.**

This is not Plaintiff Jacqueline West's first visit to federal court.   In 1999, Ms. West filed

a lengthy complaint against Defendant U.S. Postal Service advancing a myriad of claims of

discrimination and retaliation.  <u>See</u> <u>West v. Henderson</u>, No. 99-1975-TFH, slip op. (D.D.C. Nov.

3, 2000) (Gov. Exh.A).  Chief Judge Hogan, however, dismissed the 1999 complaint for failure

to exhaust administrative remedies and  for failure to establish any adverse personnel action.  <u>Id.</u>

Thereafter, on March 21, 2006, Ms. West filed her *second* federal court complaint raising

substantially similar allegations as in her 1999 Complaint.  <u>See</u> Dkt. No. 1.  The March 2006

complaint, however, also included some recent allegations that occurred in 2004 and 2005.   <u>Id.</u>

Thereafter, Defendant moved to dismiss or, in the alternative, for summary judgment on the

March 2006 complaint.  <u>See</u> Def. Mot. to Dismiss/Summary Judgment (Dkt. No. 10).  In that

Motion, Defendant argued that most of Ms. West's allegations are subject to dismissal under the

res judicata doctrine because Chief Judge Hogan has ruled on the merit of those claims.  See Def. Mot. to Dismiss/Summary Judgment (Dkt. No. 10).  Defendant also argued that her 2004 and 2005 claims of discrimination and retaliation were either untimely or that she failed to exhaust administrative remedies as to those claims.

In response to Defendant's dispositive motion, Ms. West maintains that the "sole issue before the court is whether defendant illegally transferred plaintiff into a new position." Plaintiff's Opposition in Response to Defendant's Motion to Dismiss ("Opp.") at 1 (Dkt. No. 15).  Ms. West then clarified that the "factual details listed in the complaint are not claims but merely information to chronologically describe events leading up to the claim and described events leading up to the prior EEO settlement agreement."  Id.

Concurrent with her Opposition, Ms. West also filed an Amended Complaint.  See Dkt. No. 17.  True to form, her Amended Complaint expressly states, the "issue presented is whether the defendant discriminated against plaintiff based upon (sic) when on June 4, 2005, (sic) transferred plaintiff and changed her work schedule and conditions."  A.C. at ¶ 69.  However, the Amended Complaint also includes allegations previously set forth in her *initial* March 2006 Complaint.  In light of Ms. West's Amended Complaint, the Court denied Defendant's Motion as moot.  See Dec. 23, 2006 Minute Entry.

Defendant hereby responds to Ms. West's Amended Complaint by filing this motion to dismiss or, in the alternative, for summary judgment.  In doing so, Defendant incorporates by reference its previously filed dispositive motion, especially the arguments that most of Ms. West's claims are subject to dismissal under the res judicata doctrine.  See Dkt. No. 10.

**B.    Factual Background.**

The factual background of this case has been previously set forth in Chief Judge Hogan's

Memorandum Opinion dismissing Ms. West's 1999 lawsuit.  See West v. Henderson, No. 99-

1975-TFH, slip op. (D.D.C. Nov. 3, 2000) (Gov. Exh.A).  However, a brief recitation of the

relevant facts here will provide additional context for the current dispositive motion.  Ms.

Jacqueline West worked for the U.S. Postal Service from 1991 to May 31, 2005, when she

abruptly left her job and did not return.  See West, slip op. at 1, Declaration of Leonard Adams

("Adams Decl.") at ¶ 6; see also Amended Complaint ("Compl.") at ¶23.

In April 1998, in an effort to protect Ms. West from an potentially dangerous employee,

the Agency detailed Ms. West to the Southern Maryland Processing and Distribution Center.

Two years later, Ms. West requested a transfer back to the Center as an SMO.  Declaration of

Louis Higginbotham ("Higginbotham Decl") at ¶ 2 & Exh. 1).  Ms. West's request indicated that

more than a year had passed and the reason for the reassignment (i.e. the potentially homicidal

employee) "is a moot issue."  Id.

When Ms. West initially returned to Center, she was not required to supervise employees

because she was "above complement"[1] and all the slots for maintenance SMOs were

encumbered.  Higginbotham Decl. at ¶ 4.  Mr. Higginbotham noticed that Ms. West was very

thorough, detail-oriented and organized.  Id.  The maintenance organization needed someone

with Ms. West's skills and she also expressed an interest in performing administrative duties.  Id.

---

[1]The "complement" at the Postal Service is the number of positions officially authorized
for a particular organization or job title.  When Ms. West returned to the Center she was not
immediately needed as a supervisor because she was "above complement."  (Higginbotham Dec.
¶ 4).

4

As a result, Mr. Higginbotham assigned her to perform administrative duties such as attendance control and assist supervisors in writing disciplinary letters and the Agency's position statements for Step 2 grievances. Id. These duties were also performed by other employees from Levels 17-19. Higginbotham Decl. at ¶ 5.

In October 2001, due to the anthrax contamination of the Center (a/k/a Brentwood Branch), all of the employees at the Center were reassigned throughout the Washington, D.C. Metropolitan Area. Higginbotham Decl. at ¶ 6. As a result, Ms. West was temporarily assigned to the Calvert Delivery and Distribution Center and she continued performing her administrative duties. Id. However, Mr. Steven Mummendey became her supervisor. See Declaration of Steven Mummendey ("Mummendey Decl.") at ¶ 3. At that time, Ms. West also took on other duties such as attendance control. Mummendey Decl. at ¶ 4.

In late 2003, all employees (including Ms. West) returned to the Center. Declaration of Leonard Adams ("Adams Decl.") at ¶ 4. After her return to the Center, Ms. West's attendance control function was returned to the individuals' supervisors and the Labor Relations Department took over the drafting of disciplinary actions and agency positions in Step 2 grievances. Id. Accordingly, upon the return to the Center in 2003, Ms. West was assigned the duties of making travel arrangement for employees and managing a job bidding system for craft employees. Adams Decl. at ¶ 4. At this time, Mr. Adams became Ms. West's supervisor. Adams Decl. at ¶ 2.

Prior to Ms. West assuming the management of the job bidding system, Mr. Mummendey used to perform this function. Mummendey Decl. at ¶ 4. He gave up this duty when he was promoted to a Level 23. However, after Ms. West stopped coming to work at the

end of May 2005, Mr. Mummendey resumed this responsibility.

In early 2005, another maintenance supervisor, Mr. Derrick Coleman left the Center. Adams Decl. at ¶ 5. At that time, it became imperative that Ms. West return to her duties of supervising maintenance employees because there was a shortage of supervisors. Id. Also, her administrative duties had been absorbed by others. Id. Mr. Adams informed Ms. West on May 18, 2005, of this potential change. Adams Decl. at ¶ 6. However, before the reassignment took effect, on May 31, 2005, Ms. West left her job and never returned to work. Adams Decl. at ¶ 6; Mummendey Decl. at ¶ 9. The time and attendance records indicate that in the remainder of the pay period immediately following Ms. West's departure, she was charged 66 hours of annual leave from June 1-10, 2005. Mummedey Decl. at ¶ 10 & Exh. 1. She was not charged any other type of leave during the remainder of this pay period, *i.e.* June 1-10. 2005. Id.

Ms. West filed a formal EEO complaint in July 2005 (Gov. Exh. D) and filed this lawsuit in March 2006.

### III.  Standard of Review

**A.      Motion to Dismiss Standard**.

In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. Sullivan-Obst v. Powell, Secretary, Department of State, 300 F. Supp. 2d 85, 91 (D.D.C. 2004). Therefore, the complaint will be dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id. Finally, while "many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." Id.

6

**B.    Motion for Summary Judgment Standard.**

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat summary judgment.  The non-moving party must show that the dispute is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'"  Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment.  See Lujan v. National Wildlife

Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## IV.  Argument

### A.    Plaintiff Did Not Suffer Any Adverse Action.

According to Ms. West's Amended Complaint, the only "issue presented is whether the defendant discriminated against plaintiff based upon (sic) when on June 4, 2005, (sic) transferred plaintiff and changed her work schedule and conditions."  A.C. at ¶ 69.  The Amended Complaint also states, "The plaintiff challenges this single act [i.e., the transfer] based upon five theories: (A) Reasonable Accommodation; (B) Disability Discrimination; (C) Breach of Settlement; (D) Hostile Environment; (E) Retaliation; and (F) Constructive Discharge."  A.C. at ¶ 68.

To the extent that "the transfer" is Ms. West's only claim, she has not suffered any adverse personnel action because she voluntarily left her job on May 31, 2005, and has not returned to work since that departure.  See Adams Decl. at ¶ 6; Mummendey Decl. at ¶ 9 (stating that Ms. West left work on May 31, 2005, and has not gone back to work).  As a result of her resignation, the proposed transfer that was supposed to take effect on June 4, 2005, never actually occurred.

As discussed above, in early 2005, another maintenance supervisor, Mr. Derrick Coleman

left the Center.  Adams Decl. at ¶ 5.  At that time, it became imperative that Ms. West return to her duties of supervising maintenance employees because there was a shortage of supervisors. Id.  Also, her administrative duties had been absorbed by others.  Id.  Mr. Adams informed Ms. West on May 18, 2005, of the transfer to a supervisory position.  See Adams Decl. at ¶ 6; A.C. at ¶ 26, 30, 33, 34.  However, before the reassignment took effect, on May 31, 2005, Ms. West left her job and never returned to work.  Adams Decl. at ¶ 6; Mummendey Decl. at ¶ 9.  Under these facts, Ms. West cannot show that she suffered any adverse personnel action as a result of the proposed transfer because she left her job before the transfer even occurred.  See Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (holding that to show an adverse personnel action a plaintiff must show some material adverse employment action that involved tangible effect on the conditions of employment).

To the extent that she is alleging that the proposed "transfer" caused her to leave her job – constructively discharging her – as discussed in Section V.F *infra,* Ms. West has not exhausted administrative remedies for that claim.  The Court, therefore, should grant Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment and dismiss this case with prejudice.

Even assuming that Ms. West has also validly set forth discrimination and retaliation claims under her "five theories," as shown below, those claims lack merit.

**B.    Count III:    Breach of Settlement Agreement**

Although designated as Count III, most of Ms. West's claims flow from her allegations that the parties had a settlement agreement that resolved her EEO complaint in 2001 and that Defendant breached that agreement. A.C. at Count III; see also  A.C. at ¶ 26-32, 85-92, 102. Therefore, for organizational purposes, Defendant will address Count III first.

9

1.     There Was  No Settlement Agreement.

Ms. West claims that Defendant breached a settlement agreement that previously resolved her prior EEO complaint.  See A.C. at ¶ 26-32, 85-92, 102.   However, Ms. West cannot show that there exists a valid settlement agreement that Defendant allegedly breached.

 According to Ms. West's Amended Complaint, there are three different iterations of this "settlement agreement."  The "first" settlement agreement contains the following terms: (1) Ms. West was to keep her current position, days off, and tour as previously provided including the provisions that Ms. West was not to supervise any employees; (2) Ms.West's 1997 rating of "unacceptable" was to be changed to "acceptable", and the money she would have gotten had she received an "acceptable" rating is to be given to her pro-rata; and (3) Ms. West was to retain her former parking arrangement revoked by Mr. Adams, which allowed her to park away from employee parking and near the gas pump or compound.  A.C. at ¶  26.

The second iteration describes the settlement agreement as a form of a reasonable accommodation which requires that she (1) not be assigned supervisory duties; (2) get her own office; (3) not have to work in close proximity to Mr. Edwards; (4) not be required to work on weekends; and (5) get her own handicapped parking space near the building.  A.C. at ¶ 77.  Finally, Ms. West describes a "third" iteration of the settlement agreement which provides that: (1) she keeps her current position, days off, tour, and her non-supervisory duties; (2) Defendant changes her 1997 rating from "unacceptable" to "acceptable"; (3) she retains her parking arrangement; (4) Defendant assigns her to a Grade 19 job; (5) Defendant awards attorney fees of $1,500; and (6) Defendant awards her compensatory damages of $10,00.  A.C. at ¶ 102.  Ms. West makes no mention of what consideration, if any, flowed to the Postal Service as a result of

this Agreement.  It appears that the "settlement agreement" – in whatever iteration –  is a figment

of Ms. West's imagination.  Defendant does not have a settlement agreement with Ms. West.

In fact, Ms. West admits that a settlement agreement does not exist.  On July 28, 2005,

Ms. West's attorney (Mr. Michael Beattie) sent an e-mail to Ms. Claudia Pleasant (an EEO

official), which states:

> The terms of this agreement [the 'EEO agreement'] are outlined in Ms. West's
> complaint.  Besides a piece of paper whereon one management official hand-
> wrote the terms, there is no written documentation as to this agreement.
> However, all of its terms have been recognized, executed, followed, and upheld
> over the past 5.5 years – quite a large amount of time – until Mr. Adams joined
> the picture and decided to ignore them.  Further research into the matter has
> shown that we do, in fact, have separate documentation as to each of the terms the
> Postal Service agreed to in connection with the settlement agreement.  This
> documentation shows that each of the terms were recognized, agreed to, and
> executed.  We are happy to provide copies of such documentation upon request.

See July 28, 2005 Email from Beattie to Pleasant (Gov. Exh. E) (emphasis added); see also July

25, 2005 Letter (Gov. Exh. F).  As the e-mail makes clear, "there is no written documentation"

of any settlement agreement.  Ms. West has not provided any "separate documentation" to show

that such an agreement exists.

As a matter of law, for Ms. West to prevail on a breach of contract claim, at a minimum,

she must show that there exists a binding settlement agreement between the parties.  See Qualls

v. Rumsfeld, 357 F. Supp.2d 274, 282 (D.D.C. 2005) (noting that "[a] plaintiff states a claim for

breach of contract by alleging 'the existence of a valid and enforceable contract between the

plaintiff and defendant."); Johnson v. Mercedes-Benz, USA, 182 F. Supp.2d 58, 63 (D.D.C.

2002) (noting that a settlement is a contract and, therefore, to claim a breach of contract there

must be a valid and enforceable contract); see also Green v. Small, 2006 WL 148740, at *8

(D.D.C. Jan. 19, 2006) (noting that "a valid and enforceable contract requires both (1) agreement

11

as to all material terms; and (2) intention of the parties to be bound").   More importantly, under the EEO regulations, "[a]ny settlement reached shall be in writing and signed by both parties and shall identify the claims resolved."  28 C.F.R. § 1614.603 (emphasis added).

Here, Mr. Beattie's July 28, 2005 E-mail makes clear that "[b]esides a piece of paper whereon one management official hand-wrote the terms, there is no written documentation as to this agreement."  Gov. Exh. E (emphasis added).  Moreover, this "piece of paper" does not meet the requirements under 29 C.F.R. § 1614.603.  Specifically, there is no evidence that Defendant and Ms. West (or her representative) "signed" this "piece of paper" or "identif[ied] the  claim resolved."  In any event, to date, Ms. West has not provided any documentation to demonstrate that a valid and enforceable settlement agreement exists.  Accordingly, Ms. West's breach of the settlement agreement claim fails as a matter of law because there does not exist such a contract.

## 2.    Ms. West Failed to Exhaust Administrative Remedies for Her Breach of the Settlement Agreement Claim.

Even assuming that there was a settlement agreement that Defendant allegedly breached, Ms. West failed to exhaust administrative remedies prior to bringing this claim in federal court.

Under the EEO regulations, [i]f the complainant believes that the agency failed to comply with the terms of the settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when complainant knew or should have known of the alleged noncompliance."  29 C.F.R. § 1614.504 (emphasis added).

Here, in response to Mr. Beattie's July 28th E-mail, Ms. Pleasant advised Mr. Beattie that he must "write to the Manager, EEO Dispute Resolution, 9201 Edgeworth Drive, Capitol Heights, MD 20790-7606, identifying the EEO Settlement/Agreement and case number that was breached with supportive documentation."  See Pleasant's July 28, 2005 E-mail to Mr. Beattie

(Gov. Exh. E).  To date, Ms. West has not notified the EEO Manager of the alleged breach and, therefore, has not exhausted administrative remedies prior to bringing it in federal court. Accordingly, Ms. West's failure to exhaust this claim provides another basis for the Court to dismiss her breach of the settlement agreement claim.

### 3.    The Court Lacks Subject Matter Jurisdiction Over Ms. West's Breach of the Settlement Claim.

Even assuming that there is a valid and enforceable settlement agreement, under the Tucker Act, Ms. West's breach of contract claim should be brought in the Court of Federal Claims, not in this Court.

The Tucker Act grants the Court of Federal Claims exclusive jurisdiction for damages regarding settlement agreements for $10,000 or more.  28 U.S.C. § 1491.  "A claim for breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act." Hanson v. Norton, 411 F.3d 231, 232 (D.C. Cir. 2005) (holding that "this court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims."); see also Brown v. United States, 389 F.3d 1296, 1297-98 (D.C. Cir. 2004) (holding that suits against the United States for breach of contract involving damages of more than $10,000 lie exclusively with the Court of Federal Claims); Schaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (holding that "[t]here appears to be no doubt that the Court of Federal Claims could entertain this case under the Tucker Act, for the purpose of which a settlement agreement is considered a contract.").

In Brown, plaintiff sought relief under Title VII alleging that the Department of Agriculture breached the terms of its settlement that resolved plaintiff's EEO administrative claims.  389 F.3d at 1297.  The D.C. Circuit noted that in order for plaintiff to either pursue

remedies for breach of contract or to seek relief under Title VII, she must first must prove that the agency breached the settlement agreement.  Id.  The D.C. Circuit then concluded that "because this contract question arises in a suit against the United States for more than $10,000 in damages, jurisdiction to decide whether the Department breached the settlement agreement lies exclusively in the Court of Federal Claims."  Id. at 1297-98.

In this case, like the plaintiff in Brown, Ms. West is alleging that Defendant breached a settlement agreement that Defendant had with her by (1) moving her to a supervisory position; and (2) not providing her with reasonable accommodations for her alleged disability.  See A.C. at Count III and ¶26-32, 77-78, 102-110.  It appears that Ms. West is seeking more than $10,000 in compensatory damages, which meets the statutory requirement under the Tucker Act.  See A.C. at Prayer for Relief (seeking compensatory damages, front and back pay, prejudgment and post-judgment interests, and costs and attorney's fees).   Ms. West's breach of the settlement agreement claim, therefore, is a straightforward contract claim within the meaning of the Tucker Act and it properly lies with the Court of Federal Claims, not with this Court.  Hanson, 411 F.3d at 232.  Accordingly, the Court should dismiss Ms. West's claim for lack of subject matter jurisdiction.

**C.    Count I and II:       Reasonable Accommodation and Disabilities Claim.**

Ms. West claims that Defendant denied her reasonable accommodation and discriminated against based on her disability (Post Traumatic Stress Disorder) because Defendant breached a settlement agreement between the parties.  See A.C. at Count I (¶71-80) and Count II (¶83-84).  At base, her "denial of reasonable accommodation" and disability discrimination claims are a breach of contract claim.  As discussed in Section IV.B *supra*, there does not exist a settlement

agreement and, even assuming one exists, the Court does not have jurisdiction over Ms. West's breach of contract claim.   See Section IV(A) *supra.*

**D      Count IV:  Hostile Work Environment.**

Ms. West conclusorily alleges that she was subjected to hostile work environment when her supervisor and other employees yelled at her and one employee threatened to kill her.  A.C. at ¶ 96-97.  She also claims that Defendant subjected her to a hostile work environment when Defendant transferred her, changed her duties, and altered her schedule.  A.C. at ¶ 98.  Finally, Ms. West claims that on June 4, 2005 (four days after she walked off her job) Defendant subjected her to a hostile environment when Defendant "required her to work  with an employee currently threatening to kill her."  A.C. at ¶ 99.[2]

For the workplace environment to become hostile for purposes of Title VII and merit legal relief, the offensive conduct must permeate "the workplace with discriminatory intimidation, ridicule, and insult that is <u>sufficiently severe or pervasive</u> to alter the condition of the victim's employment and create an abusive working environment."  <u>Lester v. Natsios</u>, 290 F. Supp.2d 11, 22 (D.D.C. 2003) (internal quotations and citations omitted) (emphasis added).  In <u>Faragher v. Boca Raton</u>, the Supreme Court specifically stated that "[the] standard for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'  Properly applied, this will filter out complaints attacking 'the ordinary tribulation of the workplace,' such as the sporadic use of abusive language, gender-related jokes, and occasional

---

[2]      This particular claim is anachronistic and, therefore, lacks merit. A.C. at ¶ 99. Ms. West left her job on May 31, 2005, and has not returned to work since that time.  Therefore, Defendant could not have "required" Ms. West to do anything on June 4, 2005, after her departure on May 31, 2005.

teasing." 524 U.S. 775, 787-88 (1998).  Viewed under this demanding standard, Ms. West's allegations do not rise to the level of hostile work environment.

Ms. West's complaints amount to nothing more than ordinary tribulations of the workplace.  Under the circumstances, these actions, viewed individually or collectively, are just the "ordinary tribulations of the workplace."  <u>Faragher</u>, 524 U.S. at 787-88.  More importantly, there are no allegations that Defendant's actions were the result of discriminatory animus against Ms. West due to her race, sex, or disability.  <u>Lester</u>, 290 F. Supp.2d at 22 (noting that "it must be clear that the hostile work environment was the result of discrimination based on a protected status.").  Without more, Ms. West's Count IV simply fails to establish  a hostile work environment claim and, therefore, should be dismissed.

**E.    Count V:    Retaliation**

In Count V, Ms. West sets forth thirty allegations of retaliation.  However, Ms. West's retaliation claims fail because (1) all alleged retaliatory acts occurring between 1997 and May 4, 2005, were not timely raised at the administrative level (A.C. at ¶ 109-25); (2) all claims pertaining to the alleged breach of the settlement agreement lack merit because there was no such  agreement; (3)  Ms. West cannot demonstrate the causation element of her prima facie case for retaliation because of a seven-year lapse between her last EEO complaint (filed on June 30, 1998) and the latest alleged retaliatory conduct in 2005; and  (4) Ms. West cannot show that she suffered a materially adverse personnel action under <u>Burlington</u>.  For these reasons, the Court should dismiss Ms. West's retaliation claims.

**1.    Untimely Retaliation Claims**.

Ms. West outlines a litany of claims dating back to 1997 alleging that Defendant

16

retaliated against her by taking certain actions against her.  A.C. at ¶ 109-125.  However, all alleged retaliatory acts occurring from 1997 through May 4, 2005, were untimely because Ms. West failed to file those claims with an EEO counselor within 45 days for their occurrence.[3]

Federal employees may file a civil action only after exhausting their administrative remedies before the concerned Federal agency.  42 U.S.C. § 2000e-16(c).  Under the rulemaking authority delegated by Title VII, see 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).

The EEOC's regulations provide that "aggrieved" employees or applicants for employment who allege they have been discriminated against must first consult an agency EEO counselor before filing a complaint of discrimination and must do so within 45 days of the "matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).

If the matter is not resolved through informal counseling, the aggrieved employee must, within 15 days, file a written complaint with the agency that allegedly discriminated against him. 29 C.F.R. § 1614.106(a)-(c).  The agency must investigate the matter within 180 days or reject the complaint and issue a final dismissal.  Id. at §§ 1614.106(e) and .108(e).  At the conclusion

---

[3]    Moreover, her claims of retaliation occurring between 1997 and 1999 (A.C. at ¶ 117-125) were previously litigated and Chief Judge Hogan rejected those claims for failure to demonstrate an adverse personnel action.  See West, slip op. at 11-16 (Gov. Exh. A).

of the agency's investigation, the complainant may request a hearing before an EEOC

administrative judge or an immediate final decision by the agency.  Id. at § 1614.108(f).

A complainant who receives an adverse final decision from the agency may appeal that

decision to the EEOC within 30 days, or may file a civil action within 90 days.  42 U.S.C.

2000e-16(c); 29 C.F.R. 1614.407; see also Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996); Holley

v. Dep't of Veterans Affairs, 165 F.3d 244, 246 (3d Cir. 1999).  A complainant also may file a

civil action at any time after a complaint has been pending before the agency or the EEOC for at

least 180 days.  42 U.S.C. 2000e-16(c); 29 C.F.R. 1614.407.

Compliance with these procedures and time lines is mandatory.  "Complainants must

timely exhaust these administrative remedies before bringing their claims to court."  Bowden,

106 F.3d at 437; Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely

administrative charge is a prerequisite to initiation of a Title VII action").  As the Supreme Court

stated in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "'strict adherence to the

procedural requirements specified by the legislature is the best guarantee of evenhanded

administration of the law.'"  536 U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807,

825, 100 S. Ct. 2486, 2497 (1980)).

The requirement that an aggrieved employee initially seek relief from the agency by

exhausting administrative remedies is not a mere technicality.  See Park v. Howard Univ., 71

F.3d 904, 907 (D.C. Cir. 1995).  Rather, "it is part and parcel of the congressional design to vest

in the federal agencies and officials engaged in hiring and promoting personnel 'primary

responsibility' for maintaining nondiscrimination in employment."  Kizas v. Webster, 707 F.2d

524, 544 (D.C. Cir. 1983).  Thus, exhaustion serves the important functions of providing notice

18

to the agency, allowing prompt adjudication and a narrowing of issues, and giving federal agencies the chance to handle matters internally to the maximum extent possible.  See Park, 71 F.2d at 907.

In this case, Ms. West did not contact an EEO Counselor until June 27, 2005 (Gov. Exh. D at 4 of 22) and, therefore, the following claims are untimely because the EEO contact was: (i) more than six years after Defendant allegedly threatened to fire her in February 1999 (A.C. at ¶ 117); (ii) more than six years after Defendant allegedly charged Plaintiff with 24 hours of AWOL in December 1998 (A.C. at ¶ 118); (iii) approximately seven years after Defendant transferred Plaintiff to a detail in July 1998 (A.C. at ¶ 119); (iv) more than seven years after Defendant gave Plaintiff an unacceptable rating in October 1997 (A.C. at ¶ 120); (v) more than eight years after Plaintiff was allegedly subjected to a threatening cartoon (A.C. at ¶ 121); (vi) more than eight years after Plaintiff was allegedly required to take a course in basic electricity when no other supervisor was required to do so (A.C. at ¶ 122); (vii) more than eight years after Defendant gave her an unacceptable rating in April 1997 (A.C. at ¶ 124);(viii) more than eight years after one of her supervisors allegedly stated he "would 'get that bitch'" (A.C. at ¶ 125); and (ix) more than 60 days after becoming aware Defendant would make staffing changes affecting her effective on June 4, 2005 (A.C. at ¶ 129).[4]

Under these facts, Ms. West simply did not raise of any of these claims within the 45-day period required under 29 C.F.R. § 1614.105(a)(1).  Accordingly, the Court should dismiss these claims as time barred.

---

[4]     Ms. West left her job on May 31, 2005 and, therefore, the staffing changes did not affect her.

2.    **Retaliation Because of Breach of Settlement Agreement**.

Ms. West claims that Defendant retaliated against her when it breached the settlement agreement and sought to change her work duties, hours, and location.  A.C. AT ¶ 102-110. However, as discussed above, since there was no settlement agreement, Defendant could not have retaliated against Ms. West by breaching a non-existent agreement.  See Section V.B *supra*.

3.    **Ms. West's Timely Filed Claims Fail to Satisfy Her Prima Facie Case.**

Ms. West alleges several retaliatory acts that occurred on or post-May 4, 2005. Specifically, she claims that Defendant retaliated against her (1) when Defendant breached the settlement agreement (A.C. at ¶ 102-105); (2) when, on May 4, 2005, she learned that Defendant was transferring her to Southern Maryland (A.C. at ¶ 109); (3) when Defendant gave her work usually handled by higher-level employees but paying her less in violation of the Equal Pay Act (A.C. at ¶ 106-108); (4) when Defendant did not approve her request for personal leave (A.C. at ¶ 126-128).

To establish a prima facie case for retaliation, Ms. West must show that (1) she engaged in statutorily protected activity; (2) that she suffered from a materially adverse action; and (3) that a causal connection existed between the two.  See Willingham v. Gonzales, 391 F. Supp.2d 52, 60 (D.D.C. 2005).  Defendant does not dispute that Ms. West can meet the first element of this prima facie case.  Ms. West, however, cannot demonstrate the causation and adverse personnel action elements of her prima facie case.

(a)    **No Causation**.

To establish causation, a plaintiff must pair knowledge with proximity.  This Ms.West cannot do.  In Willingham, the court observed that "'[C]ourts have not established the maximum

20

time lapse between [a] protected Title VII activity and alleged retaliatory actions.'" 391 F. Supp.2d at 61 (citing Brodetski v. Duffey, 141 F.Supp.2d 35, 43 (D.D.C.2001)).  However, the court noted that " when a court is asked to accept mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action as sufficient evidence of causality, the Supreme Court has cautioned that the temporal proximity must be very close."  Id. (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (internal quotation marks omitted).  In Willingham, the court found that "[i]n two of the cases the Supreme Court cited to support this proposition, the circuit courts rejected delays of less than 4 months as insufficient to establish causation."  Id. (citing See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month delay insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month delay insufficient)).  The court then concluded that it "has often followed a three-month rule to establish causation on the basis of temporal proximity alone."  Willingham, 391 F. Supp.2d at 61-62 (citing Buggs v. Powell, 293 F.Supp.2d 135, 148 (D.D.C.2003); Gustave-Schmidt v. Chao, 360 F.Supp.2d 105, 118-19 (D.D.C.2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a retaliation case")). Ultimately, in Willingham, the court rejected plaintiff's retaliation claim for failure to establish the temporal proximity element because of a six-month lapse between plaintiff's EEO activity and defendant's removal of plaintiff – the alleged retaliatory act.  391 F. Supp.2d at 62.

In this case, Ms. West's retaliation claims suffer the same fate as in Willingham.  Indeed, Ms. West filed several EEO complaints throughout her career at the Post Office.  Her latest "prior" EEO complaint was filed in July 1998.  See Gov. Exh. B.  There is approximately a

seven-year lapse between her 1998 EEO complaint and the alleged retaliatory acts in 2005.

Under the law, this gap is too wide to satisfy the temporal proximity element of the prima facie

case. Therefore, the Court should dismiss Ms. West's retaliation claims on this basis.

**(b)    No Materially Adverse Action.**

As discussed *supra*, in a retaliation claim, a plaintiff must produce credible evidence that

would permit a reasonable jury to conclude that the agency's actions are "materially adverse to a

reasonable employee." <u>Burlington</u>, 126 S. Ct. at 2414-15. The Supreme Court held that "[t]he

anti-retaliation provision protects an individual not from all retaliation, but from retaliation that

produces injury or harm." <u>Id</u>. at 2415. A plaintiff must show that "a reasonable employee would

have found the challenged action materially adverse, 'which in this context means it might well

have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Id</u>.

at 2415 (citing <u>Rochon</u>, 438 F. 3d at 1219 (quoting <u>Washington v. Illinois Dept. Of Revenue</u>,

420 F. 2d 658, 662 (7th Cir. 2005)). The Supreme Court emphasized the need for "material

adversity" because "it is important to separate significant from trivial harms." <u>Id</u>. This Ms. West

cannot do.

Specifically, with regard to her breach of a settlement agreement claim (A.C. at ¶ 102-

105), as discussed in Section IV(A) *supra*, there does not exist an agreement that Defendant

allegedly breached. <u>See</u> Section IV(A). Therefore, Ms. West could not have suffered any

materially adverse harm as a result of the alleged breach.

As for her claim that she learned Defendant was transferring her to Southern Maryland

(A.C. at ¶ 109-110), she suffered no adverse employment action. The transfer never materialized

because Ms. West left her job on May 31,2005, and has not returned to work since that

22

departure.  <u>See</u> Adams Decl. at ¶ 6; A.C. at ¶ 23.  To extent that Ms. West is claiming

constructive discharge as a result of the proposed transfer, she failed to exhaust  administrative

remedies for this claim.  <u>See</u> Section V(F) *infra*.

As for her allegation of receiving less pay for performing higher level duties (A.C. at ¶

107-08), Ms. West did not perform duties of a higher level employee.  She was merely doing the

work commensurate to her level.[5]

Finally, with regard to Ms. West's allegations that Defendant did not approve her

requested leave (A.C. at ¶ 126-27), her own allegations indicate that she ultimately received the

requested leave.  Specifically, Ms. West alleges that, on May 27, 2005, Defendant did not

approve her request for leave and charged her 32 hours of leave without pay ("LWOP").  <u>See</u>

A.C. at ¶ 128.  Ms. West then admits that Mr. Mummendey changed all of the 32 LWOP hours

---

[5]        The facts show that Ms. West was performing duties at her level and not at a
higher level.  In 2001, Ms. West's duty station – the Cureen & Morris Processing and
Distribution Center (a/k/a the Brentwood Station) – was closed due to anthrax contamination.
Adams Decl. at ¶ 3.  Thereafter, Ms. West was reassigned to the Calvert Delivery & Distribution
Center ("Calvert Center").  <u>Id.</u>  While at the Calvert Center Mr. Adams – Ms. West's former
supervisor  – assigned her certain administrative duties, including coordinating attendance
control and preparing disciplinary actions for employees throughout the Metropolitan Area.
Adams Decl. at ¶ 3.  Ms. West was a Level 17 Supervisor at that time.  Adams Decl. at ¶ 2.
However, Ms. West's assignments were diminished and her duties were returned to other
supervisors after Ms. West returned to the Center.  Adams Decl. at ¶ 4.
        Subsequently, in December 2003, Mr. Mummendey (another supervisor) assigned Ms.
West the responsibility of managing a job bidding system for craft employees.  Mummendey
Decl. at ¶ 4.  Mr. Mummendey had this responsibility prior to his promotion to a Level 23
employee.  Mummendey Decl. at ¶ 4.  In fact, other lower level employees, including those at
the Level 5 or 6 were also managing the job bidding system.  Mummendey Decl. at ¶ 6.  When
Ms. West left her job at the end of May 2005, Mr. Mummendey resumed the responsibility of
managing the job bidding system.  Mummendey Decl. at ¶ 4.

        Under these facts, there is no evidence showing that Ms. West at any time performed
duties above her grade level and did not receive commensurate compensation for her work.

to sick leave.  Id.  As a result, Ms. West was not adversely affected by Defendant's initial

decision denying her requested leave.   Accordingly, the Court should dismiss Ms. West's

retaliation claims for failure to show that she suffered any material adverse personnel action.

**F.    Count VI:    Constructive Discharge.**

In Count VI, Ms. West conclusorily claims "constructive discharge" by "re-alleg[ing]

paragraphs 1-68 above."  A.C. at Count VI ( ¶ 131).  Ms. West provides no further detail on this

claim.  Defendant surmises that she is claiming "constructive discharge" when she left her job

abruptly and never returned to work.  See A.C. at ¶ 15, 23, 58.  Ms. West, however, has not filed

an administrative complaint for her "constructive discharge" claim and, therefore, failed to

exhaust administrative remedies prior to bringing this claim in federal court.

There is no dispute that prior to bringing discrete claims of discrimination or retaliation

in federal court, a plaintiff must first exhaust administrative remedies as to those discrete claims.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-12 (2002); see also Section V.E surpa.

Here, on July 2005, Ms. West filed a lengthy administrative complaint outlining a series

of alleged discriminatory and retaliatory acts by Defendant.  See 2005 EEO Complaint (Gov.

Exh. D).  However, her administrative complaint does not include any allegations of constructive

discharge pertaining to her resignation on May 31, 2005.  Therefore, under the law, the Court

should dismiss the constructive discharge claim for failure to exhaust administrative remedies.[6]

---

[6]        Moreover, Ms. West's allegations that she was given additional supervisory
duties do not rise to the level required to satisfy a claim of constructive discharge.  See Veitch v.
England, 471 F.3d 124, 134 (D.C. Cir. 2006) (noting that "[o]ther courts have agreed that the
standard for constructive discharge is quite high.  'Resignations or retirements are presumed to
be voluntary' and a party alleging that a facially valid resignation was in fact the product of
unlawful duress must prove three elements: (1) one side involuntarily accepted the terms of
another; (2) the circumstances permitted no other alternative; and (3) the circumstances were the

**V. Conclusion**

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss or, in

the alternative, for Summary Judgment, and dismiss this case with prejudice.


Dated: February 22, 2007.                    Respectfully Submitted,


                                          ___/s/___Jeffrey A. Taylor_____
                                          JEFFREY A. TAYLOR, D.C. BAR # 498610
                                          United States Attorney


                                          ___/s/___Rudolph Contreras_____
                                          RUDOLPH CONTRERAS, D.C. BAR #434122
                                          Assistant United States Attorney

                                          ___/s/___John C. Truong_____
                                          JOHN C. TRUONG, D.C. BAR #465901
                                          Assistant United States Attorney
                                          555 Fourth Street, N.W.
                                          Washington, D.C.  20530
                                          (202) 307-0406

                                          Attorneys for Defendant

---

result of coercive acts of the opposite party.") (internal citation omitted).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JACQUELINE WEST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-00531 (HHK) |
| | ) | |
| JOHN POTTER, | ) | |
| Postmaster General | ) | |
| United States Postal Service | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Upon consideration of Defendant's Motion to Dismiss or, in the alternative, for Summary

Judgment, Plaintiff's Opposition thereto, and the entire record herein, it is this _____ of ____,

2007,

ORDERED that  Defendant's Motion to Dismiss or, in the alternative, for Summary

Judgment be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

WITH PREJUDICE.

_____
U.S. DISTRICT JUDGE