**UNITED STATES POSTAL SERVICE**

**EEO Complaint of Discrimination in the Postal Service**
*(See Instructions and Privacy Act Statement on Reverse)*

1. Name  JACQUELINE WEST

2. SSN

3. Case No.  IK 301-0038-05

4a. Mailing Address (Street or P.O. Box)  13115 Water End Way

4b. City, State and ZIP + 4  Upper Marlboro, MD 20774-700

5. Email Address  Jacquie West@aol.com

6. Home Phone  (301) 249-1925

7. Work Phone  (301) 219-5140

8. Position Title (USPS Employees Only)

9. Grade Level (USPS Employees Only)

10. Do You Have Veteran's Preference Eligibility?  ☐ Yes  ☐ No

11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4)  See attached

12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory  Leonard Adams

13a. Name of Your Designated Representative  Michael J. Beattie, Esq

13b. Title  MANAGER

13c. Mailing Address (Street or P.O. Box)  9516 Lee Highway Fairfax, VA 22031

13d. City, State and ZIP + 4

13e. Email Address  mjbeattie@verizon.net

13f. Home Phone  ( )

13g. Work Phone  ( )

*Providing this information will authorize the Postal Service to send important documents electronically.*

14. Type of Discrimination You Are Alleging
☑ Race (Specify):
☐ Color (Specify):
☐ Religion (Specify):
☐ National Origin (Specify):
☐ Sex (Specify):
☐ Age (40+) (Specify):
☑ Retaliation (Specify) Prior EEO Activity:
☑ Disability (Specify): Post Traumatic Stress Disorder

15. Date on Which Alleged Act(s) of Discrimination Took Place  See attached

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. **Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d)**

See attached complaint

AUG 10 005

17. What Remedy Are You Seeking to Resolve this Complaint?

See attached complaint

GOVERNMENT EXHIBIT  D

18. Did You Discuss Your Complaint with a *Dispute Resolution Specialist* or a *REDRESS Mediator*?
☐ Yes (Date you received the Notice of Final Interview): _____  ☐ No

Via mail

19a. Signature of Dispute Resolution Specialist      C. L. PLEASANT

19b. Date  7/29/05

20. Signature of Complainant or Complainant's Attorney

21. Date of this Complaint

Formal Complaint
Page 1 of 22

## Privacy Act Notice

The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO Program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants

or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

## Instructions

A. Use this form to file a formal complaint if you are an employee or applicant who believes that you have been discriminated against by the Postal Service because of your race, color, religion, sex, age (40+), national origin, or disability. You must have presented the matter to an EEO dispute resolution specialist within 45 calendar days of the date the incident occurred or, if a personnel action is involved, within 45 calendar days of the effective date of the action.

B. Unless you have agreed to extend the 30-day period for an additional 60 calendar days, you will receive a notice of right to file a formal complaint within 30 calendar days from the date of your first contact with the EEO Office. You must file your formal complaint within 15 calendar days of the date on which you receive your notice of right to file. If you do not receive a notice of right to file within the appropriate time period, you may file a formal complaint at any time thereafter, up to 15 calendar days after receiving the notice.

C. If you have agreed to participate in alternate dispute resolution (ADR), the informal process must be completed within 90 calendar days of your first contact with the EEO office. You have a right to file a formal complaint at any time thereafter, up to 15 calendar days after you have received your notice of right to file.

D. Your notice of right to file contains the address where your formal complaint must be mailed or delivered. The formal complaint will be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within 5 days of the expiration of the filing period.

E. The time limits for filing a formal complaint may be extended if you show that you were prevented by circumstances beyond your control from timely submitting the complaint, or if you present other reasons considered sufficient by the Postal Service.

F. If you need help in preparing this form, you may obtain assistance from a representative of your choice. You may also seek guidance from the dispute resolution specialist who issued you the notice of right to file.

G. Your formal complaint must be in writing and must be signed and dated by you or your attorney. You are entitled to a representative of your choice at all stages of the EEO complaint process; however, only an attorney can sign official EEO documents on your behalf.

H. If your written complaint is accepted, it will be assigned to an EEO complaints investigator who will provide you with an opportunity to present all facts that you believe resulted in the alleged discrimination. The EEO complaints investigator will conduct a thorough review of the circumstances under which the alleged discrimination occurred.

I. While your complaint is under investigation, you may amend it to add claims that are like or related. Contact the EEO office for the address where your written amendment request must be mailed or delivered.

J. You or your representative will each be provided a copy of the completed investigative file. You have the right to request a hearing within 30 calendar days of the date you receive the investigative file by mailing or delivering your request to the appropriate Equal Employment Opportunity Commission (EEOC) District Office with a copy to the area Manager, EEO Compliance & Appeals. If you are represented by an attorney, the 30-day period will begin on the date

your attorney receives a copy of the case file. Instead of requesting a hearing, you may request an agency decision without a hearing and the head of the agency or his/her designee will issue you a decision letter with appeal rights.

K. If you request a hearing, the EEOC will appoint an administrative judge (AJ) to conduct a hearing. The AJ will notify you and the Postal Service of the right to seek discovery prior to the hearing to develop evidence reasonably on matters relevant to the issues raised in the complaint(s) to be heard. Attendance at the hearing will be limited to persons the administrative judge determines have direct knowledge relating to the complaint. Hearings are part of the investigative process and are closed to the public.

L. Following the hearing, the AJ will send you and the agency a copy of the hearing record, including the transcript and his/her decision. The head of the agency, or his/her designee, will review the entire record, including the transcript, and will determine whether or not to implement the AJ's decision. You will receive the agency's notification of final action within 40 days of the date the agency receives the AJ's decision. If the agency's final action will not fully implement the AJ's decision, the agency must appeal to the EEOC. A copy of the Postal Service's appeal will be attached to your notification of final action.

M. If you are not satisfied with the decision of the AJ, or the agency's final action on the decision, you have the right to appeal within 30 calendar days after receiving notification of the agency's final action. Your appeal must be mailed to the EEOC at the following address:

EEOC
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC 20036-9848

N. Instead of filing an appeal of the agency's final action to the EEOC's Office of Federal Operations (OFO), you may file a civil action in an appropriate U.S. District Court within 90 calendar days of your receipt of the agency's final action.

O. You may also file a civil action in an appropriate U.S. district court after 190 calendar days have passed from the date you filed the complaint, if the final agency action has not been issued and an appeal has not been filed; within 90 days of receipt of the OFO's decision on your appeal; or after 180 days from the date you filed your appeal with the OFO, if there has been no decision issued on that appeal.

P. Special statutory provisions in the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a, relate to age discrimination. The Public Law sets forth the right to by-pass the administrative complaint processing procedure and file a civil action. For additional information, contact the EEO office.

Q. Under the Equal Pay Act, you have the right to file a civil action without exhausting the administrative procedures.

R. You must keep the EEO complaint processing office aware of your current mailing address at all times. Failure to notify the EEO complaint processing office and the EEOC of an address change could result in the dismissal of your complaint.



**UNITED STATES**
**POSTAL SERVICE** ₃

## Allegations of Discrimination Based on Age

| Case No. |
| --- |
| IK301-0033-05 |

To: (Full Name and Address)

JACQUELINE WEST
13115 WATER FOWL WAY
UPPER MARLBORO, MD 20772

The Age Discrimination in Employment Act (ADEA) of 1967, as amended, prohibits discrimination in employment on the basis of age (40 years or older). The ADEA allows persons claiming age discrimination to go directly to court without going through an agency's administrative complaint procedures. The following information is being provided to you to explain the procedures concerning age discrimination.

If your complaint alleges age discrimination, you may bypass the administrative complaint process by electing not to file a formal complaint and instead filing a civil action in an appropriate U.S. District Court. Before filing suit in U.S. District Court, you must file a notice of intent to sue with the Office of Federal Operations, Equal Employment Opportunity Commission. You must file the notice within 180 calendar days of the date of the alleged discriminatory action. Once you have filed a timely notice of intent to sue with the EEOC, you must wait thirty (30) calendar days before filing a civil action.

A. *Notices of intent to sue must be mailed to the EEOC at the following address:*

> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> PO BOX 19848
> WASHINGTON DC 20036-9848

*or delivered to:*

> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> 1801 L ST NW
> WASHINGTON DC 20507-0001

*or faxed (if no more than 10 pages) to:*

> OFFICE OF FEDERAL OPERATIONS
> FEDERAL SECTOR PROGRAMS
> 202-663-7022

B. *The notice of intent to sue should be dated and must contain the following information:*

(1) Statement of intent to file a civil action under 29 U.S.C. 633a of the Age Discrimination in Employment Act of 1967, as amended;
(2) Your name, address, and telephone number;
(3) Name, address, and telephone number of your designated representative, if any;
(4) Name and location of the Postal facility where the alleged discriminatory action occurred;
(5) Date on which the alleged discriminatory action occurred;
(6) Statement of the nature of the alleged discriminatory action(s); and
(7) Your signature or your representative's signature.

C. *If you choose to file a formal EEO complaint, you must exhaust your administrative remedies before you can file a civil action. 29 C.F.R. §1614 provides that you exhaust administrative remedies under the ADEA: (1) 180 days after filing a complaint, if the Postal Service has not taken final action and you have not filed an appeal; or (2) within 90 calendar days after receiving a final action by the Postal Service; or (3) 180 days after filing an appeal with the EEOC, if the Commission has not issued a final decision; or (4) within 90 days after receiving the Commission's final decision on appeal.*

| Signature of Dispute Resolution Specialist: | Date Issued<br>mailed<br>7/29/05 | Your Signature | Date Received |
| --- | --- | --- | --- |

PS Form **2563-B**, March 2001

EEO OFFICE
CAPITAL PERFORMANCE CLUSTER


UNITED STATES
POSTAL SERVICE

July 29, 2005

AUG

JACQUELINE WEST
13115 WATER FOWL WAY
UPPER MARLBORO, MD 20774-7005                    CASE #1K-201-0038-05

Dear Ms. West:

This letter is in reference to your request for EEO counseling which was submitted to the EEO office on 06/27/05. You alleged discrimination based on age, sex, retaliation due to prior EEO activity/cases in 1997 thru 1999, and disability (Post Traumatic Stress Disorder) when the following occurred:

-5/27/2005, denied leave by Mr. Adams and is continually being charged AWOL/LWOP.
-5/18/2005, informed that she would be moved to a supervisory capacity, supervising employees, including Michael Edwards, who threatened her life.
-5/18/2005, informed that she would have to work on Saturdays, and 5/04/2005, learned that she was being considered for a transfer to Southern Maryland, Tour 1 or 3 and mandated to work week-ends in violation of EEO agreement (to work weekends).
-5/18/2005, administrative duties she performed are being transferred to higher level employees Steve Mummendey, EAS-23, will be responsible for the Maintenance Bidding System, and Anthony D'Souza, EAS-19, who will be taking over training/travel, whereas she received EAS-17 pay, in violation of Equal Work, Equal Pay.
-4/22/2005, forbade from attending an employee-sponsored bone-marrow volunteer drive.
-4/2004, Mr. Adams gave facility keys to all the other supervisors except counselee.
-12/2003, Mr. Adams accused her of taking a folder from his office and when she took this complaint to the then Maintenance Manager Higginbotham, he said not to worry about it.
-01/2000, counselee had different parking arrangements until Mr. Adams revoked it in violation of her settlement agreement;
-02/05/1999, threatened with termination for not transferring to a Tour 3 shift position with Sunday/Monday off days.
-12/1998, charged 24 hours AWOL while on injury leave.
-07/1998, Michael Edwards frequented the area within one mile of where counselee was to be working.
-(no dated cited), employee Joseph Mays accused counselee of posting a picture of Michael Edwards, which included his medical information;
-10/10/1997, counselee was the only woman required to take the courses, after unacceptable performance rating; 04/10/1997, informed that she would be rated unacceptable because she was not supporting management in that she filed an EEO and other complaints.
-05/05/1997, subject to offensive and threatening cartoon that depicted a coffin and contained her name, left on all the employees' desks;
-(no date cited) Mr. Adams told a former supervisor he knew counselee was responsible for encouraging Sandra Beverly to file an EEO sexual harassment complaint against counselee and threatened he would "get that bitch".
-(no date cited) Mr. Adams required her to work most holidays;
-(no date cited) Mr. Adams never provided her an evaluation of her performance, except for her mid-year and end-year review despite request;
-(no date cited) Mr. Adams undermined her authority by settling Step 1 grievance, a task that was part of her duties;


Formal Complaint
Page 4 of 22

- 2 -

-(no date cited) denied a request to work six days a week;
-(no date cited) days off changed multiple times while not changes the days off of any other supervisor by Mr. Adams and Former Manager of Maintenance, Tom Duschene.
-10/16/1996, 02/15/1997, 08/11/1997, reassigned to different assignments;
-12/2004, 11/23/1996, denied promotion(s);

Note:  Although I am not the one making the decision on acceptance, if pursued, any dates/issues more than 45 days of a request for counseling could be deemed untimely filed and/or any cited in previous EEO complaints could be dismissed. Also, as previously stated, any violation/breach of EEO settlement Agreement would be processed separate from this inquiry.

An inquiry was made to Leonard Adams, the then Acting Manager, Maintenance, and Steve Mummendey, Manager, Maintenance Operations. In response to the inquiry, Mr. Adams denied charging counselee AWOL and/or denying her leave.  He maintains that Steve Mummendey , Manager, Maintenance Operations, became her manager, who was moved from Tour 1 to Tour 2, at the time.  Available record reveals leave slip submitted 6/21/2005, disapproved citing, "no documentation" and type of leave, "AWOL".  Mr. Mummendey maintains that counselee knows the rules and that she needs to submit leave requests and proper documentation to him, her manager.  However, available record reveals a TACS Adjust Pay relative to the above.

Mr. Adams maintains that he was doing a supervisory change.  Counselee was going to be a supervisor on the work room floor because he was short of supervisors. He met with all supervisors and told his plans for Tour 2. Ms. West went out because she did not want to supervise. She is a Level 17 Supervisor and it's her job to deal with people.  She had done Step 2's and letter for supervisors.  Step 2's went back to Human Resources and Supervisors do their own letters.

Mr. Adams maintains that the cited employee, Mike Edwards is an MPE.  Ms. West was assigned to supervise Custodians.  He maintains that she would not be supervising Mr. Edwards. He maintains that Mr. Edwards walked by her office, where Ms. West did Administrative duties every day to get to the stock room.  In addition, Ms. West wrote a letter to the previous Maintenance Manager, Louis Higginbotham a few years ago, requesting to come back in the building (Washington, DC) and even working where Michael Edwards worked and that it was a moot issue. Available record dated 1/12/00. reveals , "Please accept my request for a lateral transfer back to Washington; DC as an SMO. I was indirectly reassigned to Southern Maryland. More than a year has passed and the reason for the indirect reassignment is a moot issue."

Mr. Adams maintains relative to Ms. West's statement citing 5/4/2005. he needed supervisors here (DC) and would not have considered her for SMD.  Mr. Adams maintains that counselee never had a settlement agreement .  He maintains that Robert E. Maddern, then Manager, Capital Metro Operations, granted counselee a reassignment to Tour 2, Saturday/Sunday off, SMO position at the Washington, DC P & D Center for a year.  Available record reads in part. "This assignment is approved by Mr. Maddern to be over complement for a period of one year during which time she will be afforded the training required to prepare her for supervision of maintenance technical employees. Work assignment during this period will be made by the Washington P & DC Maintenance Manager subject to the tour and days off specified above...."

Mr. Adams maintains that the administrative duties counselee performed including Maintenance Bidding System and training/travel could be done by anybody, it doesn't have a level on it.  Counselee did bidding system and travel assignment to be gainfully employed. She did travel along with Ada Sherrill.  In addition, counselee only did travel for about 3-4 months. Then, she was learning and



- 3 -

being taught by Ms. Sherrell and Mr. Mummendey. Travel was added because counselee's work load had decreased. This was done by Louis Higginbotham, former Manager, Maintenance, when all returned to the building after being closed due to Anthrax.

Mr. Adams maintains relative to Ms. West's statement citing for 4/22/2005, that counselee was not forbade from attending an employee-sponsored bone-marrow volunteer drive. She attended with another Maintenance Supervisor, who attended and came back. Since no one sent anything down for Ms. West to volunteer, she was only authorized to hear the speech, etc. However, she stayed and was serving cake. Therefore, Diversity Specialist, Benita Hunt, was informed to tell her to report to her assignment because she wasn't authorized to be there. Nothing happened to her as a result of her failure to follow instructions.

Mr. Adams maintains relative to Ms. West's statement citing 4/2004, that he doesn't issue keys, they are issued by Maintenance Control Department. He maintains that all supervisors do not have keys. They use a master key kept in a central location, as needed. He maintains that counselee has a key to her office and prior to the day she walked out on stress, her office was completely emptied of all personal items including refrigerator, radio, micro wave, pictures on the wall, etc. Nothing was moved to her new location.

Mr. Adams maintains relative to Ms. West's statement citing 12/2003, that he never accused counselee personally of taking the folder. He just told Mr. Higginbotham it was missing. Nothing happened as a result of the folder being missing and nothing was held against her.

Mr. Adams maintains that from 1998 to 2000 that Ms. West was at Southern Maryland under Kenneth Fells Management, who has since retired.

He maintains that 10/10/97, counselee received an unacceptable performance rating from him that had been entertained in a previous EEO. He maintains that he never asked her to take College Courses. She did that on her own. He maintains that relative to her statement citing 4/10/1997, her rating was based on job performance.

He denied having anything to do with counselee's citing for 5/05/1997. He denied counselee's statement in reference to an EEO sexual harassment complaint. He maintains that counselee never worked the holiday while in the office assignment. He maintains that with the new pay for performance it is not possible that employees would not have performance evaluations. This has been in effect since 2004. He maintains that 2001-2003, he did not do counselee's merit because of being out of the building. He remembers counselee wanted to work on a Saturday to learn to do travel. She was in an office job and had ample opportunity during regular time.

He maintains that 1998 to 2000, counselee was in SMD. 2001-2003, they were out of the building. He maintains that counselee's days just got changed with her new assignment. He denied having any involvement in her denied promotions. NOTHING FOLLOWS.

If you are not satisfied with management's response, you have the right to file a formal complaint, within **fifteen (15) calendar days** of receipt of this notice to:

Manager, EEO Compliance & Appeals
USPS Cap Metro Area
P O Box 1730
Ashburn VA  20146-1730

- 4 -

Only the same or like and related matters raised at the counseling stage may be the subject of this formal complaint. Enclosed is a PS Form 2579-A, Notice of Right to File Individual Complaint. and PS Form 2565, EEO Complaint of Discrimination, which can only be signed by you or an attorney representative. Ps 2563B (Allegations of Discrimination Based on Age) is included for your information relative to age discrimination.

If you have any questions, please feel free to contact me at **(301-499-7367/4)**.

**Claudia L. Pleasant**
Dispute Resolution Specialist

Attachment(s)

Cc: Michael Beattie, Attorney, 9502B Lee Hwy, Fairfax, VA 22031-2303.

CERTIFICATE OF MAILING:

For timeliness purposes, it is presumed that this Notice of Right to File a Formal Complaint Letter and attachments were received within five (5) calendar days after it was mailed on the date indicated below.

_____7/29/05_____
Date mailed

_____
EEO Office-Capital District

 **UNITED STATES POSTAL SERVICE** ®

## Notice of Right to File Individual Complaint

TO: Name (First, MI. Last)

*JACQUELINE WEST*

Re: Case No.

*1K 201-0038-05*

This notice will attest to the fact that on ___*Upon Receipt*___ I advised you of the actions taken concerning the alleged discrimination that you brought to my attention. If the matters that you raised during the pre-complaint processing stage have not been resolved, you have the right to file a formal complaint within 15 calendar days of the date you receive this notice. If you decide to file a formal complaint, your complaint must be put in writing and signed by you or your attorney, if you retained one to represent you. I am providing you with *PS Form 2565, EEO Complaint of Discrimination in the Postal Service,* for this purpose. Your complaint must be delivered to:

> MANAGER, EEO COMPLIANCE & APPEALS
> CAPITAL METRO OPERATIONS
> P O BOX 1730
> ASHBURN, VA 20146-1730

Your complaint will be deemed timely filed if it is received at this address before the expiration of the 15-day filing period, or if it bears a postmark that is dated before the expiration of the filing period. In the absence of a legible postmark, it must be received by mail within 5 calendar days of the expiration of the filing period.

An EEO discrimination complaint can be processed only if the complainant alleges he or she has been discriminated against on the basis of race, color, religion, sex, age (40+), national origin, disability or retaliation for past EEO activity. In addition, courts have ruled the complainant has the burden of presenting evidence which would give rise to an inference of discrimination. A complaint must contain the following information:

(1) Your name, address, position, and level;

■ If you change your address, you have a regulatory requirement to immediately report the change to the Manager, EEO Compliance and Appeals, in your area. (If you are employed at Postal Service Headquarters, a Headquarters Field Unit or by the Postal Inspection Service, you should notify the EEO Appeals Review Specialist at Postal Service Headquarters.)

(2) The specific action or matter complained of, the date of occurrence, and the names of the official(s) who took the alleged discriminatory action at issue in this complaint;

(3) The specific type of discrimination alleged, e.g., race - African American, sex - female, etc.;

■ If you allege disability discrimination, the alleged disability must be more than a temporary condition.
■ If you allege age discrimination, you must have been at least 40 years of age on the date the alleged discriminatory action occurred.

(4) A brief statement of the facts that led you to believe you were discriminated against and the names of similarly situated individuals whom you believe were treated differently than you.

■ If you allege a failure to accommodate a disability or your religion, you must explain the accommodation sought and why you sought it.
■ If you allege retaliation, you must show a connection between the action at issue in the complaint you are filing and your past EEO activity. You must also show that when the alleged discriminatory action at issue in this complaint occurred, the management who took the action was aware that you had previously engaged in protected activity.

(5) The name of the EEO Dispute Resolution Specialist who provided you with this notice and the date you received this Notice of Right to File.

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations,

contracts, licenses, grants or other benefits; to a congressional office at your request; to an expert, consultant, or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

Signature of Dispute Resolution Specialist

Date Issued *March*
*7/29/05*

Your Signature

Date Received

*Dispute Resolution Specialist: If you are mailing this Notice, you must send it by Certified Mail, Return Receipt Requested.*

PS Form 2579-A, March 2001

## Informal Complaint

### Count 1
*Harassment*

Plaintiff, Jacqueline West, was harassed based on her sex (female), age (over 40), and disability (extreme stress and post-traumatic stress disorder) by Defendant, the United States Postal Service. Plaintiff cites the following examples:

a.  On May 18, 2005, Leonard Adams, Manager of Maintenance Operations, informed Plaintiff she was being moved to a position of supervisory capacity, where she would supervise approximately 37 employees. Such movement is in retaliation against Plaintiff.

1. This is in violation of her previous settlement agreement with management that provides, in part:

    i.   Plaintiff is to keep her current position, days off, and tour as previously promised. This includes the provision that Plaintiff is not to supervise any employees.
    ii.  Plaintiff's 1997 rating of "unacceptable" is to be changed to "acceptable", and the money Plaintiff would have gotten had she received an "acceptable" rating is to be given her pro-rata.
    iii. Plaintiff is to retain her former parking arrangement revoked by Mr. Adams in 2003, which allowed her to park away from employee parking and near the gas pump or compound.

2. Not only is Plaintiff being required to supervise employees in violation of her previous settlement agreement with management, but Plaintiff is being made to supervise an unusually large amount of employees. The average number of employees under a supervisor is 15-20. Plaintiff is supervising approximately 37 employees.

3. The group of employees Plaintiff is being made to supervise potentially includes Michael Edwards, the employee who threatened her life. Although she was not assigned to supervise Mr. Edwards directly, she will in fact be in such a position



Formal Complaint
Page 9 of 22

when all other supervisors are absent.

4. The group of employees Plaintiff is being made to supervise is the least desirable group to supervise because of its reputation as an especially difficult group with which to work. Supervising this group significantly decreases her potential for promotion.

b.      On May 18, 2005, Mr. Adams informed Plaintiff she would have to work Saturdays. This is a direct violation of her settlement accommodation prohibiting her from working on weekends. Management directed this to be the case because of the likelihood of Mr. Edwards' presence and the minimal level of security and other personnel in the building on such days. Mr. Adams disregarded management's directives in retaliation against Plaintiff.

    1. The group Plaintiff was assigned to begin supervising effective June 4, 2005 was previously supervised by Lisa Brown-McNeil. When Ms. Brown-McNeil was in this position, she was given Saturdays and Sundays off. Now that Plaintiff occupies this position, Mr. Adams suddenly feels weekend work is necessary for this position and cannot be given as time off.

c.      On May 18, 2005, Mr. Adams informed Plaintiff she would have to vacate her office space, which was isolated from Michael Edwards, and move to an open-area supervisor's office. Mr. Edwards frequents this area as part of his daily activities because his supervisor is also located there.

d.      On May 18, 2005, Mr. Adams changed the type of work Plaintiff is to perform. Although Plaintiff held the title of Supervisor Maintenance Operations (EAS 17), she was performing administrative work normally handled by employees of higher pay levels. She was not receiving the requisite pay for such work. This is a violation of Equal Work, Equal Pay because Plaintiff was paid at a level 17 the entire time she performed these



functions.

1. The duties Plaintiff performed prior to her new assignment are being transferred to higher level employees. Steve Mummendey (EAS 23) will be responsible for the Maintenance Bidding System. Anthony D'Souza (EAS 19) will be taking over training/travel.

e. On May 4, 2005, Plaintiff learned she was being considered for a transfer to Southern Maryland. Management had previously asked for volunteers to take such a transfer. However, because this transfer would require either a Tour 1 or Tour 3 shift, both of which mandate working weekends and are the least desirable shifts, no one volunteered.

2. Plaintiff's name was considered because she had an accommodation that prevented her from supervising other employees.

e. On April 22, 2005, Leonard Adams forbade Plaintiff from attending an employee-sponsored bone-marrow volunteer drive. Mr. Adams subsequently sent a subordinate employee to ascertain whether Plaintiff was at the drive, and if so, what she was doing there.

f. In April 2004, Leonard Adams gave facility keys to all other supervisors except Plaintiff.

g. In December 2003, Leonard Adams accused Plaintiff of taking a folder from his office that contained information pertaining to Plaintiff's EEO claim. Plaintiff denied taking the file.

1. Mr. Adams had his supervisor, Lisa McNeil, call to accuse Plaintiff of taking the folder from Mr. Adams's office. Plaintiff denied taking the file.
When Plaintiff reported these events to Louis Higginbotham, Maintenance Manager, he replied it was unlikely Leonard Adams even had a file and told Plaintiff not to worry about it.

h. In 2000, when Plaintiff was pulling out of the parking lot in her car, Michael Edwards was also pulling out of the employee parking lot in his car. When Mr. Edwards noticed Plaintiff, he tried to run her off the road by continually jumping into Plaintiff's lane, cutting her off. Plaintiff finally had to pull off the road and turn on to an unfamiliar road. Plaintiff complained, and management initially moved Plaintiff to a different parking arrangement.

However, Leonard Adams voiced his negative response to the parking arrangements made for Plaintiff and announced he would have Plaintiff's car towed off the official lot.

i. On February 5, 1999, Plaintiff was threatened with termination if she did not transfer to a Tour 3 shift position.

j. In December 1998, Plaintiff was charged 24 hours of AWOL (i.e. leave without pay) while she was on injury leave.

k. In July 1998, Plaintiff was forced to transfer to a detail in the Southern Maryland post office once Michael Edwards was allowed to come back to work. This distressed Plaintiff because she knew Michael Edwards frequented the Bally's fitness gym, which was within one mile of the Southern Maryland post office.

l. An employee, Joseph Randy Mays, accused Plaintiff of posting a picture of Michael Edwards. which included Mr. Edwards's medical information.

m. On October 10, 1997, at Plaintiff's year-end performance review, Leonard Adams gave her a rating of "unacceptable" despite filling out a narrative of her accomplishments and trainings.

n. On May 5, 1997, Plaintiff was subject to an offensive and threatening cartoon that depicted a coffin and contained her name. This cartoon was left on all the employees' desks.

o. Plaintiff was required to take PEDC Self Study courses in Basic Electricity to receive an acceptable performance rating. No other supervisor. except for Samuel Brown, another employee at United States Postal Service, was required to take these courses. No other female supervisor was required to take these courses.

    1. Sam Brown's performance rating was changed to "acceptable" after he completed PEDC Self Study Courses. Plaintiff's rating was not changed to "acceptable" after she completed PEDC Self Study Courses.

p. On April 10, 1997 Leonard Adams informed Plaintiff she would be rated "unacceptable" because she was not supporting management. Mr. Adams said Plaintiff was not supporting management because she had filed an EEO complaint, had given information to the U.S. Postal Inspection Service, had filed a complaint with the National Association of Postal Services (NAPS), and had written a letter to Congressman Steny Hoyer detailing her complaints about the U.S. Postal Service.

q. Leonard Adams told his supervisor, Jimmy Tihoe, he knew Plaintiff was responsible for encouraging Sandra Beverly, a United States Postal Service employee, to file an EEO sexual harassment complaint against him and threatened he would "get that bitch."

r. Leonard Adams refused to grant Plaintiff's requests for time off.

s. Leonard Adams required Plaintiff to work most holidays (e.g. Washington's Birthday, Mother's Day, and Memorial Day).

t. Leonard Adams never provided Plaintiff an evaluation of her performance, except for her mid-year and end-year review, despite Plaintiff requesting such an evaluation.

u. Leonard Adams undermined Plaintiff's authority by settling Step 1 grievances between P Plaintiff's employees, a task that was part of Plaintiff's duties.

v. Plaintiff was denied her request to work six days a week.

w. United States Post Office management, including Leonard Adams and Tom Duschene, Manager of Maintenance, changed Plaintiff's days off multiple times, while he did not change the days off of any other supervisor.

x. Leonard Adams reassigned Plaintiff to different assignments multiple times without stated goals or objectives:

      1. On October 16, 1996, Leonard Adams reassigned Plaintiff to Supervisor
      Maintenance Operations of Building Services.



    i.   When informing Plaintiff of reassignment, Mr. Adams stated to Plaintiff she should become his secretary.

2. On February 15, 1997, Leonard Adams reassigned Plaintiff to Supervisor Maintenance Operations of BEM – Mechanics, Painters, and Welders.

    i.   Although the previous employee in this position received Saturdays and Sundays off, Mr. Adams changed Plaintiff's days off to Thursdays and Fridays.

    ii.   Mr. Adams told Plaintiff he did this so she could spend more time with him.

    iii.   Due to the frequent absence of BEM Supervisor, Lesley Bailey, Plaintiff frequently had to supervise her husband, though this was not her official role.

3. On August 11, 1997, Mr. Adams assigned Plaintiff to Supervisor Maintenance Operations of MPE. The allotted days off for this position were Sunday and Monday. However, these days were changed to weekdays when Plaintiff was assigned this position, thereby requiring her to work on weekends.

y. On May 27, 2005, Plaintiff presented Mr. Adams with a request for four hours of personal leave on May 31, 2005. On May 31, when it was time for Plaintiff to leave, Mr. Adams refused to allow her to do so, forcefully demanding her to meet with a co-worker instead. Plaintiff tried to negotiate reasonably, but when Mr. Adams continued his demands and became overbearing, Plaintiff's heart began pounding, and she felt excruciating pain shoot down her left arm and hand. Recognizing this as a symptom of a heart attack, Plaintiff quickly filled out a leave request for time to be taken out of her annual sick leave, stating the reason as a job-related injury, and was immediately taken to the hospital for examination.

    4. Despite Plaintiff filing proper paperwork, her paycheck indicated she has been charged with a total of 32 hours of leave without pay (LWOP) or absence without official leave (AWOL), which carries a disciplinary action.

z. On April 22, 2005, Mr. Adams informed Plaintiff he was going to make staffing changes that would affect Plaintiff's duties effective June 04, 2005. Since Plaintiff left work on May 31, the sign showing her name has been removed from her office. Further, employees have been informed that their supervisor (i.e. Plaintiff) is out on sick leave. This violates Plaintiff's settlement agreement described above in that it was agreed she would not supervise employees.

## Count 2





*Denial of Advancement Opportunities*

The United States Postal Service denied Plaintiff advanced opportunities based on her sex (female), age (over 40), and disability (extreme stress and post-traumatic stress disorder). Plaintiff cites the following examples:

a. In November 2004, Plaintiff applied for a position that was eventually filled by a male employee. When Plaintiff asked Leonard Adams why she was not awarded the position, he told Plaintiff she would not be awarded a managerial position without changing her settlement agreement with management prohibiting her from supervising employees.

b. On October 10, 1997, at Plaintfff's year-end performance review, Mr. Adams gave her a rating of "unacceptable" despite him filling out a narrative of her accomplishments and trainings. This resulted in the loss of approximately $1,500 and a lower salary at present.

c. On November 23, 1996, Tom Duschene, passed over Plaintiff for a promotion to Manager, Maintenance Operations Support, pay level EAS-18, and instead promoted James Wallace, a lower-level employee. This was despite the fact that Plaintiff had filled the position for approximately a year as Acting Manager, Maintenance Operations Support.

d. Plaintiff applied for numerous positions within the United States Postal Service where she met the specified qualifications, but the positions were eventually filled by male employees.

## Count 3
*Denial of Reasonable Accommodations*

Plaintiff has a disability (extreme stress and post-traumatic stress disorder) due to a job-related injury that occurred when a subordinate employee, Michael Edwards, threatened her life. Accordingly, Plaintiff required the following accommodations: (1) not to work weekends due to Mr. Edwards' presence and minimal security at the Post Office during weekends; (2) not to have to park in the employee parking lot; (3) not to supervise other employees; and (4) not to have a workstation/office in the general area of Mr. Edwards. These provisions have been in place for over five years. The United States Postal Service denied these reasonable accommodations.

7



Plaintiff cites the following examples:

    a.    Plaintiff was required to work weekends at the Post Office.

    b.    In December 2003, Plaintiff was required to park in the employee parking lot instead of special parking arrangements that would have allowed Plaintiff to enter from a separate entrance apart from the one Mr. Edwards used.

    c.    Plaintiff was required to supervise employees, including the one who threatened her life, Mr. Edwards.

    d.    Plaintiff was required to work in a cubicle near the employee who previously threatened her life, Mr. Edwards.

## Count 4
### *Retaliation*

The United States Postal Service is retaliating against Plaintiff because she filed an EEO

complaint against it. Plaintiff cites the following examples:

    a.    On May 18, 2005, Leonard Adams, Manager of Maintenance Operations, informed

Plaintiff she was being moved to a position of supervisory capacity, where she would

supervise approximately 37 employees.

        I.    This is in violation of her previous settlement agreement with management that provides:

            i.    Plaintiff is to keep her current position, days off, and tour as previously promised. This includes the provision that Plaintiff is not to supervise any employees.

           ii.    Plaintiff's 1997 rating of "unacceptable" is to be changed to "acceptable", and the money Plaintiff would have gotten had she received an "acceptable" rating is to be given her pro-rata.

          iii.    Plaintiff is to retain her former parking arrangement revoked by Mr. Adams in 2003, which allowed her to park away from employee parking and near the gas pump or compound.

          iv.    Plaintiff would be assigned to a Grade 19 job in Labor Relations.

          v.    Plaintiff would be granted attorney fees of $1,500.

          vi.    Plaintiff would be granted compensatory damages of $10,000.

    b.    On May 18, 2005, Mr. Adams informed Plaintiff she would have to work Saturdays.

This is a direct violation of her settlement accommodation prohibiting her from



working on weekends. Management directed this to be the case because of the likelihood of Mr. Edwards' presence and the minimal level of security and other personnel in the building on such days. Mr. Adams disregarded management's directives in retaliation against Plaintiff.

> 1. The group Mr. Adams assigned Plaintiff to supervise was previously supervised by Lisa Brown-McNeil. When Ms. Brown-McNeil was in this position, she was given Saturdays and Sundays off. Now that Plaintiff occupies this position, Mr. Adams suddenly feels weekend work is necessary for this position and cannot be given as time off.

c. On May 18, 2005, Mr. Adams changed the type of work Plaintiff is to perform. Although Plaintiff held the title of Supervisor Maintenance Operations (EAS 17), she was performing administrative work normally handled by employees of higher pay levels. She was not receiving the requisite pay for such work. This is a violation of Equal Work, Equal Pay because Plaintiff was paid at a level 17 the entire time she performed these functions.

> 1.The duties Plaintiff performed prior to her new assignment are being transferred to higher level employees. Steve Mummendey (EAS 23) will be responsible for the Maintenance Bidding System. Anthony D'Souza (EAS 19) will be taking over training/travel.

d. On May 4, 2005, Plaintiff learned she was being considered for a transfer to Southern Maryland. Management had previously asked for volunteers to take such a transfer. However, because this transfer would require either a Tour 1 or Tour 3 shift, both of which mandate working weekends and are the least desirable shifts, no one volunteered.

> 1.Plaintiff's name was considered because she had an accommodation that prevented her from supervising other employees.

e. On April 22, 2005, Mr. Adams forbade Plaintiff from attending an employee-

9



sponsored bone-marrow volunteer drive. Mr. Adams subsequently sent a subordinate

employee to ascertain whether Plaintiff was at the drive, and if so, what she was doing there.

f.      In April 2004, Mr. Adams gave facility keys to all the other supervisors except

Plaintiff.

g.      In December 2003, Mr. Adams accused Plaintiff of taking a folder from his office

that contained information pertaining to Plaintiff's EEO claim. Plaintiff denied

taking file.

          1.  Mr. Adams had his supervisor, Lisa Brown-McNeil, call Plaintiff to accuse
             her of taking the folder from Mr. Adams's office. Plaintiff denied taking the
             file.
          2.  When Plaintiff reported these events to Louis Higginbotham, Maintenance
             Manager, he replied it was unlikely Mr. Adams even had a file and told
             Plaintiff not to worry about it.

h.      In 2000, when Plaintiff was pulling out of the parking lot in her car, Michael Edwards

was also pulling out of the employee parking lot in his car. When Mr. Edwards

noticed Plaintiff, he tried to run her off the road by continually jumping into

Plaintiff's lane, cutting her off. Plaintiff finally had to pull off the road and turn onto

an unfamiliar road. Plaintiff complained, and initially management moved Plaintiff

to a different parking arrangement. However, Mr. Adams voiced his negative

response to the parking arrangements made for Plaintiff and announced he would

have Plaintiff's car towed off the official lot.


i.      On February 5, 1999, Plaintiff was threatened with termination if she did not transfer

to a Tour 3 shift position that had Sundays and Mondays off.

j.      In December 1998, Plaintiff was charged 24 hours of AWOL (i.e. leave without pay)

while she was on injury leave.



k.    In July 1998, Plaintiff was made to transfer to a detail in the Southern Maryland post office once Michael Edwards was allowed to come back to work. This distressed Plaintiff, as she knew Michael Edwards frequented the Bally's fitness gym that was within a mile of the Southern Maryland post office.

l.    On October 10, 1997, at Plaintfff's year-end performance review, Mr. Adams gave her a rating of "unacceptable" despite filling out a narrative of her accomplishments and trainings.

m.    On May 5, 1997, Plaintiff was subject to an offensive and threatening cartoon that depicted a coffin and contained her name. This cartoon was left on all the employees' desk.

n.    Plaintiff was required to take PEDC Self Study courses in Basic Electricity to receive an acceptable performance rating. No other supervisor, except for Samuel Brown, was required to take these courses. No other female supervisor was required to take these courses.

> 1. Sam Brown's performance rating was changed to "acceptable" after he completed PEDC Self Study Courses. Plaintiff's rating was not changed to "acceptable" after she completed PEDC Self Study Courses.

o.    On April 10, 1997, Mr. Adams informed Plaintiff she would be given a rating of "unacceptable" because she was not supporting management. Mr. Adams said Plaintiff was not supporting management because she had filed an EEO complaint, had given information to the U.S. Postal Inspection Service, had filed a complaint with the National Association of Postal Services (NAPS), and had written a letter to Congressman Steny Hoyer that detailed her complaints about the Postal Service.

p.    Mr. Adams told his supervisor, Jimmy Tihoe, he knew Plaintiff was responsible for

11

encouraging another Postal Service employee, Sandra Beverly, to file an EEO sexual harassment claim against him. Mr. Adams threatened he would "get that bitch."

q.      On May 27, 2005, Plaintiff presented Mr. Adams with a request for four hours of personal leave on May 31, 2005. On May 31, when it was time for Plaintiff to leave, Mr. Adams refused to allow her to do so, forcefully demanding her to meet with a co-worker instead. Plaintiff tried to negotiate reasonably, but when Mr. Adams continued his demands and became overbearing, Plaintiff's heart began pounding, and she felt excruciating pain shoot down her left arm and hand. Recognizing this as a symptom of a heart attack, Plaintiff quickly filled out a leave request for time to be taken out of her annual sick leave, stating the reason as a job-related injury, and was immediately taken to the hospital for examination.

    1. Despite Plaintiff filing proper paperwork, her paycheck indicated she has been charged with a total of 32 hours of leave without pay (LWOP) or absence without official leave (AWOL), which carries a disciplinary action.

r.      On April 22, 2005, Mr. Adams informed Plaintiff he was going to make staffing changes that would affect Plaintiff's duties effective June 04, 2005. Since Plaintiff left work on May 31, the sign showing her name has been removed from her office. Further, employees have been informed that their supervisor (i.e. Plaintiff) is out on sick leave. This violates Plaintiff's settlement agreement described above in that it was agreed she would not supervise employees.

12


Formal Complaint
Page 20 of 22

ne and Associates
nael J. Beattie, Esq.
B Lee Hwy
ax, VA 2203

FIRST CLASS

CERTIFIED MAIL

7005 1160 0000 8456 7590

U.S. POSTAGE
PAID
ASHBURN VA
AUG 22 '05
AMOUNT
$3.36

Manager, EEO Compliance & Appeals
USPS Compliance Appeal
P.O. Box 1730
Ashburn, VA 20146-1730

