**In the United States District Court**
**for the District of Columbia**

| | | |
|---|---|---|
| Jacqueline West, | ) | |
| Plaintiff | ) | |
| v. | ) | Case Number: <u>06-00531-HHK</u> |
| | ) | |
| John Potter, in his official capacity as | ) | |
| United States Postmaster General | ) | |
| United States Postal Service, | ) | |
| Defendant | ) | |

_____

**Plaintiff's Opposition in Response to Defendant's Motion to Dismiss**

**1. Introduction**

Plaintiff brings this case pursuant to the Rehabilitation Act of 1973, because the Postal Service discriminated against her based upon her disability, refused to accommodate her disability, and retaliated against her for filing a prior Rehabilitation Act complaint.   Following the filing of the original complaint, defendant obtained numerous continuances, and eventually filed a motion to dismiss based upon a misinterpretation of her original lawsuit.   Plaintiff then filed a first amended complaint to make the allegations crystal clear, but the amended complaint did not actually expand the scope of the lawsuit or add new causes of action.   The court granted leave to amend and ruled that defendant's motion to dismiss was moot.   Defendant next filed a motion to dismiss the first amended complaint, and this brief is plaintiff's response to this second motion to dismiss.

Defendant continues to misinterpret the lawsuit, making claims about disputed factual issues.   **The key issue before the court is whether the agency reasonably accommodated her disability, but defendant's brief glosses over, if not ignores, this central issue.**   The plaintiff realizes there is a tiny chance the court might find either that

1

she is not qualified for the position or does not have a disability, and the court could in theory dismiss her case for failure to prove a prima facia case of disability discrimination. Therefore, plaintiff raises two backup arguments just in case the plaintiff does not prove a reasonable accommodation claim.   The transfer to a life-threatening job created a hostile workplace in retaliation for filing the prior Rehabilitation.   Regardless of whether she actually has a disability, defendant had a legal duty to continue the reasonable accommodation, because of a settlement of her prior EEO claims.   Defendant spends a great deal of space in their brief attempting to debunk the alternative theories without really addressing the primary issue of a failure to accommodate.   Third, defendant withdrew the accommodations to retaliate against her for filing a prior EEO complaint. However, these arguments are irrelevant if the court does not dismiss her reasonable accommodation claim.   Therefore, defendant's motion must be denied.

Assuming the court is inclined to grant a motion to dismiss, defendant has not even filed a motion to dismiss.   Instead, defendant has filed a motion for partial dismissal seeking to throw out Count II, III, IV, V, and VI.   The brief does not address Count I dealing with whether defendant reasonably accommodated plaintiff.   Defendant attempts to show weaknesses in Count II through VI and then apparently asks to hold these weaknesses against plaintiff and dismiss Count I as an afterthought.   Plaintiff contends the court should analyze each count separately and only dismiss Counts that the court believes do not meet legal standards.

## 2.  Scope of Representation

The court should understand that the United States attorney is not representing the official view of the United States government but rather only that of the United States

Postal Service.   U.S.P.S. previously litigated many of the issues now before the court at

the Department of Labor Office of Workers Compensation Programs and has consistently

lost.   The Department of Labor found as a fact that plaintiff is disabled with Post-

Traumatic Stress Disorder stemming from a sex discrimination and retaliation.   After

defendant removed plaintiff's accommodation and was transferred to work with a

psychopath who attempted to kill her, plaintiff walked off the job and filed a

reoccurrence claim with the Department of Labor alleging she could not return to work,

because she was unable to work in a life threatening environment.   She claimed the

current debilitating post-traumatic stress disorder was a reoccurrence of a prior successful

workers compensation claim.   Although the Department of Labor approved her claim,

the U.S.P.S. continued to mark her as absent without leave.   Counsel for plaintiff then

contacted counsel for U.S.P.S. and asked that the agency restore her prior

accommodation and permit plaintiff return to her prior job.   Over the past seven months,

opposing counsel has never responded to this request.   However, under pressure from the

Department of Labor, U.S.P.S. allowed Mrs. West to return to work for 30 days.   As of

this date, it is completely unclear whether U.S.P.S. will extend the assignment.

    As to the issue of timeliness, the Equal Employment Opportunity Commission has

consistently held that the time for contacting a counselor runs from the date the individual

needs an accommodation.   The Postal Service has litigated the issue of timeliness of

EEO complaint before the Equal Employment Opportunity Commission and has

consistently lost such arguments.   In fact, counsel for plaintiff in this case won two cases

on this exact issue before the EEOC.   In *Tucker v. Potter*, Postal General, the

Commission reversed an agency dismissal for timeliness, because the agency had denied

several requests for a light duty assignment and wrote:

> The Commission has stated that since an employer has an ongoing obligation to provide a reasonable accommodation, failure to provide such accommodation constitutes a violation each time the employee needs it. See: "Threshold Issues," EEOC Compliance Manual, at 2-73 (revised July 21, 2005). In his initial contact with the EEO Office, complainant asserted that his request for light duty was denied on October 20, 2005, and that he was forced to use sick and annual leave. Based on the statements from complainant, we find that complainant has asserted a claim of denial of reasonable accommodation. It is unclear from the record as to how long complainant required the requested accommodation. As noted above, the agency has the burden of obtaining sufficient information to support its determination as to timeliness. We find that that the agency has not supported its conclusion that complainant's EEO Counselor contact was untimely. Accordingly, we find that the agency's dismissal of the complaint pursuant to 29 C.F.R. § 1614.107(a)(2) was inappropriate.

For these reasons, the brief has been filed solely on behalf of the United States

Postal Service and does not reflect the views of the Department of Labor or the Equal

Employment Opportunity Commission.

## 4. Statement of Facts

This case arose in 2005 when the defendant reneged on a prior settlement

agreement. Prior to the settlement, plaintiff endured a pattern of harassment over the

past decade and the pattern persists to this very day. Her manager berated and yelled at

plaintiff each day over a period of years. The harassment culminated when a co-worker

stalked plaintiff, threatened to kill her, then tried to run plaintiff's car off the road. *See*

*Exhibit 2.* Defendant did not regard the death threat, stalking, and attempted murder as

particularly serious offenses and did not discipline or investigate the co-workers actions.

As a result, plaintiff could not return to work in the hostile environment and instead

applied for workers compensation.

Originally, defendant fought plaintiff's workers compensation claim and would

not permit her to return to work. Her current counsel represented plaintiff on her workers

compensation and the EEO complaints pending in the administrative process in 2000 and

2001.  He reached a settlement with an attorney for the United States Postal Service, and

management wrote terms of the verbal settlement.  See Exhibit 1, 3, 4, 5.  As a result of

the settlement, defendant cooperated with the processing of the workers compensation

claim and accommodated her disability by transferring her to a vacant position at another

post office and giving her handicapped parking privileges.   In consideration, West

dropped all pending EEO charges before the agency and the EEOC.  Exhibit 5

specifically acknowledges this fact.

       In the settlement, the parties acknowledged Mrs. West was psychologically

unable to work with individuals threatening to kill her, and the parties therefore stipulated

the transfer was a necessary accommodation of her disability.   The Postal Service does

not make or reject workers compensation claims; however federal agencies can submit

information and documents attempting to refute the claim.  The United States

Department of Labor acts as an impartial fact finder able and willing to make workers

compensation determinations over the objections of the affected agency.   The

Department of Labor concluded that supervisory level employment continually sexually

harassed plaintiff over a series of years.    Under principals of the law of the case and

collateral estoppel the government cannot now deny a previously disputed factual and

legal adjudication by another instrumentality of the same governmental body.   The

Department of Labor found as a fact that plaintiff contracted a mental disability (panic

and anxiety disorder) as a direct result of factors of employment.   The Department found

Mrs. West to be partially disabled meaning that she could not return to her old job, but

she could perform other gainful employment in the economy.   Once the Department of

Labor classified her as partially disabled and found the disability was attributed to factors of employment, the affected government agency can reasonably accommodate the employee's disability by placing them in a different position or the agency can continue to pay workers compensation.   Due to the prior settlement agreement, the Postal Service opted to place Mrs. West in a new position.

Mrs. West returned to work at a new post office after the 2001 settlement agreement, and she performed admirably in her new position.  See Exhibit 2, 3, 4. However in 2005, the defendant chose to renege on the settlement and place her with the harassing manager and the employee who is still threatening to kill her.

Immediately after defendant transferred plaintiff back to the hostile environment plaintiff immediately went out on workers compensation leave and filed two EEO complaints.   The first alleged discriminatory transfer and the second alleged a breach of the 2001 settlement agreement.   Plaintiff contacted an EEO counselor immediately after learning of the transfer.   Because the agency declined to mediate or take any remedial action, Mrs. West filed a formal complaint.  Each of those complaints are now before the court.

In 2005, the Department of Labor approved her workers compensation claim as a reoccurrence of the prior injury.   Nevertheless, the Postal Service has declined to implement this decision fully, withheld workers compensation pay, and currently charges plaintiff as AWOL during periods of approved workers compensation leave. Information about the workers compensation is helpful only as background information. This case does not concern her claim for workers compensation benefits, because the Department of Labor has already made two entirely favorable rulings.

Plaintiff previously filed lawsuit in 2000 concerning events prior to 2000, and the court dismissed these complaints as untimely. Plaintiff learned from this prior experience and therefore ensured her current complaints were timely. This civil action includes information about events occurring prior to 2000, because (1) this case deals with retaliation for the prior EEO complaints, (2) explains the reasons plaintiff originally became disabled, (3) helps to show a pattern and practice of discrimination, and (4) is useful to understand the sequence of events leading up to this case. Mrs. West is not seeking damages for events occurring prior to the 2000 court decision. The defendant erects a straw man asking that claims prior to the 2000 court decision be dismissed. Since the prior events do not form the basis of the claim for damages or other relief dismissal of something non-existent would be impossible. To the extent the defendant's motion to dismiss could be reframed as a motion to strike prior allegations, this would be improper because it is highly relevant to her retaliation claim. Proof of prior EEO complaints is an essential element of a retaliation claim. Therefore, deletion of references would be highly prejudicial.

When an individual alleges a breach of settlement agreement, the court can either enforce the agreement or reactivate the settled claim and permit the settled cases to proceed forward. Plaintiff did not settle the civil action filed in 2000. Instead, she settled cases pending in the administrative process.

### 5.    Summary of Argument

Defendant moves to dismiss based upon the absurd suggestion that (1) plaintiff has not suffered an adverse action, (2) plaintiff did not have a settlement agreement, (3)

her complaint is untimely.   The defendant in fact well knows each of these reason are completely false and is continuing as to discriminate against her to this very day.

This is not simply a case where the agency did not tell its own counsel about accommodation requests and retaliation.   Rather, counsel for plaintiff told counsel for defendant in writing and verbally about the current discrimination occurring today, and counsel for defendant made a conscious decision to mislead the court into thinking the complaint was untimely.   Furthermore, defendant has retaliated against plaintiff for filing this lawsuit by refusing to permit her to return to work.   Therefore, the motion to dismiss must be summarily rebuffed and the agency should be sanctioned for knowingly attempting to mislead the court.

### 6. Timeliness of Reasonable Accommodation Claim

Although well aware that plaintiff has been petitioning for over one year to get reasonable accommodation and counsel for plaintiff notified counsel for defendant that these requests are still currently being ignored and plaintiff has been placed on AWOL status, defendant asks the court to dismiss the case as untimely.   Timeliness issues must be made by determining the date of the alleged discriminatory event, the date of EEO counselor contact, and then computing the number of days between the two dates.   The last time Mrs. West made a request was through her attorney in September 2006 and through the Department of Labor in February 2007.

As the EEOC correctly wrote in *Torrueles v. Post Master General*, 0197 3219 (1998), "Failure to accommodate may constitute a recurring violation, that is, a violation occurs anew each day the employer fails to provide the accommodation."   The EEOC has consistently held a failure to accommodate is NOT a continuing violation but rather a

recurring violation.   A continuing violation is an equitable defense to a statute of

limitations in order to temporarily stop the clock from running, but it does not determine

when the clock starts to run.   A recurring violation is not a defense and instead is simply

used to determine the date from which the clock starts to run.   Therefore, the statute of

limitations to contact a counselor did not begin to run until February 2007.   Since West

contacted an EEO counselor two years ago, her counselor contact could hardly be more

timely.   The large number of times the Postal Service has lost on this issue of timeliness

indicates the agency does not have a different interpretation.   Simply denying the motion

to dismiss does not go far enough, the agency's failure to site adverse case demonstrates

bad faith and warrants sanctions.

### 7.    Timeliness of Disparate Treatment Claim

Assuming her reasonable accommodation claim gets dismissed, Mrs. West claims

disparate treatment as a back up theory.   She alleges the agency transferred her into a

hostile environment because of prejudice against her disability and retaliation for filing

prior EEO complaints.

The agency argues the 45 day EEO counselor contact rule starts to run from the

date the complainant learns about an upcoming personnel action; however, the EEOC

strongly disagrees with the agency's interpretation.   29 C.F.R. 1614 provides a

complainant may not file a complaint prior to a personnel action, and if the complainant

files prior to a personnel action, the complaint must be dismissed, because it is not yet

ripe.   Proposed personnel actions are likewise subject to immediate dismissal.   Under

the agency's interpretation, an agency could tell an employee of a personnel action that

will occur 50 days later.   If the employee immediately filed a complaint upon learning

about the future action, the agency could dismiss for lack of ripeness.   Upon receipt of the dismissal, the same employee could then file another complaint a few days after the agency implemented the personnel action, and the agency could dismiss the second complaint as untimely.   Thus, under the agency's interpretation many individuals with strong EEO cases could be precluded from ever pursuing a complaint due to this catch-22.

Fortunately, the EEOC foresaw this potential catch-22 and precluded it from occurring.   In *Taylor v. Postal Service,* 01821353 (1983), the Commission rejected the same position now argued by the agency writing, "The 45 day time period is measured in calendar days from the effective date of the personnel action".   In Taylor, the Postal Service attempted to prohibit the complainant from filing an EEO complaint by notifying her of the personnel action on October 30 while failing to carry out the decision until December 30.   By putting off the personnel action, the agency prevented her from filing a ripe complaint until after the filing deadline.   The EEOC overruled the agency's final decision.

Undeterred by numerous precedents to the contrary and lacking any supporting case law, the agency nevertheless continued to dismiss cases based upon the date of notice rather than the effective date of the personnel action.   In *Dudley v. Postmaster General* 01960067 (1996) and *Vrooman v. Postmaster General* 01965897 (1997) rebuked the Postal Service holding the 45 days begins to run for the effective date of the action.   Calculating the date of the effective date of the agency's transfer West to work with the psychopath until the date of EEO counselor contact definitively establishes that the contact was timely

### 8.    Timeliness of Breach of Settlement Claim

The agency's motion does not create a genuine issue of material fact about the timeliness of the breach complaint much less prove there is no set of facts plaintiff could prove in order to make the complaint timely.   The agency asks the court to consider documents outside the pleadings in ruling upon a motion to dismiss.   The court should not review these documents during the context of a Rule 12 (b) motion.

Defendant attaches a timely letter to the wrong office wherein the official asks counsel for plaintiff to send the complaint elsewhere.   Defendant does not attach any documents from correct official stating she did not receive such a complaint.   The defendant's brief does not even say the correct official was not carbon copied on the letter nor does the incorrect official say they did not forward the letter to the correct person.   Plaintiff attaches an affidavit from Michael Beattie attesting to the fact that he promptly sent the breach complaint to the correct official.   See: Exhibit 1.

### Existence of Settlement Agreement

Counsel for plaintiff and a representative of the Postal Service reached a settlement agreement in 2000 whereby West would withdraw pending administrative claims in return for the agency granting her reasonable accommodations permitting her to return to work.   Michael Beattie represented Jacqueline West through the workers compensation and administrative EEO process in 2000.   The entire goal of these two cases was not to win wage loss compensation, but rather directed at getting the Postal Service to grant her reasonable accommodations enabling her to return to work.   Mrs. West returned to ask Michael Beattie to represent her based upon the excellent results achieved in 2000.   She filed this lawsuit, because the agency withdrew the

accommodations provided for in the settlement agreement.   Exhibit #1 attached attests to the existence of the settlement agreement.   The question presented by a Rule 12 (b) (6) is not whether such a settlement agreement actually exists.   Nor can a motion to dismiss determine the terms of the settlement agreement or whether to enforce the agreement. The question is rather assuming the truth of the complaint and inferences drawn there from, whether there is any set of fact plaintiff could prove to the existence and enforceability of a settlement.   The defendants have not actually raised a factual dispute about the existence of the agreement, but to the extent the court feels there is such a dispute, such a dispute should be resolved after a trial.

### 9.    Tucker Act Transfer Request

The government argues Mrs. West filed her breach of contract claim in the wrong court, because she sought more than $10,000 and thus must bring the breach of contract claim in the United States Court of Claims.   This would mean she would have to make extremely similar claims in two different cases which would double her attorney fees and costs.   Defendant well understands this would be prohibitively expensive, and thus a Court of Claims case will never be filed.

The question presented by a 12 (b) (6) motion is whether there is any interpretation of the lawsuit under which she could prevail.   U.S. District Court have concurrent jurisdiction with the U.S. Court of Claims involving contracts for less than $10,000.   District Courts also have authority to issue injunctive and declaratory relief beyond that available in the U.S. Court of Claims.   Although the damages sought in all six Counts come to more than $10,000, the question presented is whether plaintiff's lawsuit could be read as asking for less than $10,000.   In fact, plaintiff seeks less than

$10,000 on the breach of contract claim, but her primary relief sought on the breach of

settlement claim is a court order requiring specific performance of the contract.    Unlike

the run of the mill Court of Claims case where the government failed to pay a contractor

for work performed, she wants the agency to give the accommodations agreed to in the

settlement agreement.    Therefore, the Tucker Act does not preclude the court from

having jurisdiction over the breach of settlement claim.

### 10.    Timeliness of Disparate Treatment Claim

The complaint claims the defendant discriminated against plaintiff by transferring

her into an abusive and life threatening environment.    Defendant says plaintiff learned

she might be transferred on May 4, 2005 but failed to contact an EEO counselor until

June 27, 2005 (54 days after learning of the possible transfer).    However, the defendant

has always maintained the clock does not begin to run until the date of a final decision.

The defendant chose to delegate to the Equal Employment Opportunity Commission the

authority to issue regulations for processing federal employee discrimination complaints.

Acting on behalf of the defendant the EEOC decided the clock does not begin to run until

the date of a "final decision".    More importantly, federal employees are specifically

prohibited by law from filing an EEO complaint dealing with a proposed personnel

action.  (See: 29 C.F.R. 1614).    The United States Attorney for the District of Columbia

is asking this court to issue an order striking down a key provision in the federal

government's own regulations.    The Postal Service tells the court it does not wish to

comply anymore with regulations promulgated for all federal agencies.    Even assuming

the Postal Service had statutory authority to make such a claim, it is unethical for the

United States Attorney to ask the court to invalidate a regulation enforced and

promulgated by one of its own clients (EEOC).   If defendant were correct that the clock

begins to tick once an employee learns of possible personnel actions, a federal agency

could avoid ever being charged with discrimination by delaying proposed personnel

actions.   A federal agency could tell an employee of a possible personnel action and

simply wait 60 days to avoid an EEO complaint.   The employee would have to file the

complaint by the 45th day, but the complaint would automatically be dismissed, because

the decision was only a proposed decision.   Even if defendant's argument had a scintilla

of legal merit, it would yield bizarrely unconscionable consequences and be completely

violative of federal public policy.

　　　　The complaint states plaintiff did not learn she would definitely be transferred

until May 18 (40 days prior to contacting an EEO counselor), but the complaint further

states the personnel action would not become effective until June 4, 2005 (23 days prior

to contacting the EEO counselor.   The EEOC and federal court have consistently held

the clock begins to run from the effective date of the personnel action rather than the

publication of the personnel action. *Venita Colbert v. John E. Potter, Postmaster*

*General United States Postal Service*, No. 05-5330, 2006 WL 3687233 (D.C.Cir.)[1].

　　　　None of the dates listed by the defendant as being outside the 45 day limit have

any bearing on this case, because this case concerns only the transfer.   None of the

background information about events up to the transfer are claims.   A timeliness

question turns on the date "the claim arose".   Since the claim did not arise until June 4,

---

[1] Under Title VII, USPS employees are required to file lawsuits seeking relief for employment discrimination within 90 days of receipt of notice of final administrative action. 42 U.S.C. § 2000e-16(c). Equal Employment Opportunity Commission ("EEOC") regulations also require a claimant "under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court ... [w]ithin 90 days of receipt of the final action on an individual or class complaint." 29 C.F.R. § 1614.407(a) (2006). *Id*

2005 and plaintiff contacted a counselor within 23 days, there can be little doubt that the complaint was timely.

### 11.  Estoppel and Law of the Case

Throughout the defendant's brief, the Postal Service argues plaintiff "voluntarily" left her position.  However, the Postal Service already unsuccessfully litigated this point. The United States Department of Labor concluded Mrs. West had post-traumatic stress disorder from job related harassment.   See Exhibit 6, letter from Irfan Saeed attesting to chronic Post-Traumatic Stress Disorder.  Exhibit 7 illustrates the conditions under which Plaintiff can work. After terminating plaintiff's reasonable accommodations, plaintiff requested and won an award to pay wage loss benefits.  Over the Postal Services' objection, the Department of Labor concluded she was medically unable to return to work without accommodations due to a job related injury.   The defendant's characterization of her failure to come to work as voluntary is absolutely false.   Voluntariness requires an individual to make a choice from different options.   Mrs. West did not choose to abstain from work but rather her doctor prohibited her from working and the Department of Labor found she was not able to return to work.   Under the doctrines of collateral estoppel and the law of the case, the Department of Labor's determination that plaintiff's absence from work was involuntary prevents the agency from re-litigating the issue.

### 12.  Timeliness of Hostile Workplace

How would you feel if your supervisor required you to work with a psychopath who previously attempted to murder you and further require you to work with him on

Saturdays when the building operated with a minimum staff lacked security guards to protect you?  John Potter says he would not mind at all, and he cannot understand why Mrs. West would have a problem with such an assignment.  Defendant's motion to dismiss should be denied, because both the Department of Labor and Justice Sandra Day O'Connor disagree with Mr. Potter.

The plaintiff claim arose when the defendant transferred her to work with the felon, and there can be no doubt the effective date of the transfer occurred within 45 days of the transfer.  Plaintiff includes significant background information to support her claim.  The Postal Service attempts to mask the real issue by judging the timeliness of events which are not part of her claim and for which she is not seeking damages.  To support her claim of retaliation, she is required to prove she previously engaged in protected EEO activity.  Therefore, the law required Mrs. West to discuss her prior EEO activity.  She needed to show that she not only previously filed a prior EEO complaint, but also that the complaint related to conduct prohibited under Title VII and/or the Rehabilitation Act.  Therefore, she had to address the substance of her prior EEO complaints.  Further, Mrs. West is required to prove that the transfer would create a hostile workplace.  She needed to explain the abuse, threats, stalking, and attempted murder for the court to understand why a reasonable person would find the environment in the new position would be severe and pervasive.   Without actually changing the issues before the court, the plaintiff filed an amended complaint to avoid any possible confusion that might be caused by one incorrectly thinking conduct outside of the 45 day formed the basis of her claim.  Nevertheless, the Postal Service seeks dismissal of her

timely claim, because the statement of facts mentions conduct outside the 45 day window.

Under Rule 12 (b) (6), the question present is whether any severe and pervasive actions created a hostile environment.  The United States Department of Labor found as a fact that given the post-traumatic stress disorder inflicted by the Postal Service, Mrs. West was unable to return to work due to the transfer.   Mrs. West had filed a re-occurrence claim, and the Department of Labor determined the claim was timely. Federal employee workers compensation claims are governed by case law developed by the Employee Compensation Appeals Board, and Board decisions consistently states that the Department of Labor looks to case law related to equal employment opportunity claims as guidance in order to determine whether the mental injury suffered is serious enough to prevent the employee from returning to work.   In conclusion, the Department found the transfer caused Mrs. West to have a mental breakdown.

The Supreme Court addressed this precise issue in *Harris v. Forklift Systems* U.S. (1993).   Justice O'Connor wrote:

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological wellbeing, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.

While Justice O'Connor held that harassment comes into play prior to the plaintiff suffering a nervous breakdown, the Postal Service writes harassment cannot be found where the government has already determined the job environment caused a nervous breakdown and where the harasser tried to kill her.   Under the Postal Service's

interpretation of Title VII harassment would not be sufficiently severe and pervasive until the harasser actually succeeded in murdering her.

We know from both *Farrager v. Boca Rotan* and *Ellerth v. Burlington Industries* that an employer has a duty to take prompt and effective measure to stop workplace harassment.   Pursuant to the settlement agreement, the Postal Service grudgingly agreed to alter Mrs. West duties, parking privileges, departure time, work schedule, and departure location.   These measures prevented Mrs. West from coming in contact with the harasser, and the Department of Labor found Mrs. West was mentally unable to work for the agency without these measures.    Subsequently, the Postal Service withdrew all the safety protections and again placed her life in jeopardy.   As of the date of this writing the Department of Labor finally compelled the Postal Service to renew the prior accommodations for a 30 day period, and Mrs. West will now be returning to work. Under the Postal Service's interpretation of Title VII, an employer can be immune from liability under Title VII by taking measures to stop the measures, leave the measures in place for 46 days, withdraw the protective measures, and then claim the complaint is untimely.   The defendant's ludicrous position violates the spirit if not the letter of Harris, Farrager, and Ellerth, and therefore, the motion to dismiss must be denied.

### 13.  Adverse Act Inapplicable to Reasonable Accommodation Claim

Defendant makes the non-sensical assertion that plaintiff's reasonable accommodation claim should be dismissed, because the withdrawal of accommodation was not an adverse act.   The most basic precept of employment discrimination law holds different causes of action must be evaluated upon different legal tests.   A reasonable accommodation claim is proven by showing (1) plaintiff has a medical condition (2)

substantially impairing, (3) a major life activity, (4) is qualified for the job with or without reasonable accommodations, (5) defendant knew of the disability, and (6) the accommodations sought by plaintiff are reasonable.    Plaintiff needed modification of job duties, work schedule, and departure location.    These are precisely the accommodations which 29 C.F.R. 1614 says must be provided.    Defendant should be sanctioned for this frivolous motion, because no court has ever held the withdrawal of accommodation must be an adverse act.

### 14.    Adverse Act under Hostile Workplace Claim

Defendant seeks dismissal of the hostile workplace claim, because placing plaintiff into a hostile environment was not an adverse act.    The motion must be denied, because proof of an adverse act has never been an element of a hostile workplace cause of action.

### 15.  Adverse Act under Disparate Treatment Theory

Plaintiff's disparate treatment claim is separate and distinct from the reasonable accommodation claim above.    Defendant argues that a transfer to a job that plaintiff is physically unable to perform does not amount to an adverse act.    Plaintiff contends the defendant's actions not only constitute an adverse act but in fact can be classified as constructive discharge.

The Supreme Court recently conclusively established that defendant's argument is completely without merit.  See: *Burlington Northern and Santa Fe Railway v. White* 126 S.Ct. 2405 Case Number 05-269 U.S. (2006).    The Supreme Court took the case because as Justice Breyer wrote, "Some Circuits have insisted upon a close relationship between the retaliatory action and employment. The Sixth Circuit majority in this case, for

example, said that a plaintiff must show an "adverse employment action," which it defined as a "materially adverse change in the terms and conditions" of employment. *364 F.3d, at 795.* Other Circuits have not so limited the scope of the provision. The Seventh and the District of Columbia Circuits have said that the plaintiff must show that the "employer's challenged action would have been material to a reasonable employee'". The defendant's claim that plaintiff must show an adverse act was explicitly rejected by the Supreme Court in Burlington Northern and Santa v. White. Since the Supreme Court specifically praised and adopted the standard used by the D.C. Circuit, the Postal Service's interpretation of the law is all the more untenable.

Breyer wrote, "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. Cf., *e.g., Washington, supra,* at 662 (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional ***2416*** advancement might well deter a reasonable employee from complaining about discrimination. See 2 EEOC 1998 Manual § 8, p. 8-14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra,* at 661." Exactly like the defendant in Burlington Northern and Santa Fe, the Postal Service claims a reassignment cannot be an adverse act. "First, Burlington argues that a reassignment of duties cannot constitute retaliatory discrimination where, as here, both the former and present duties fall within the same job description. Brief for

Petitioner 24-25.  We do not see why that is so…Reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale,* 523 U.S., at 81, 118 S.Ct. 998. But here, the jury had before it considerable evidence that the track labor duties were "by all accounts more arduous and dirtier"; that the "forklift operator position required more qualifications, which is an indication of prestige"; and that "the forklift operator position was objectively considered a better job and the male employees resented White for occupying it."   Whereas here the Supreme Court explicitly reject the identical argument made the defendant, merely denying the motion is insufficient, defendant should be sanctioned for making plaintiff to go the trouble of responding to the frivolous argument.

### 16.     Merits of Reasonable Accommodation Claim

Just as defendant has cavalierly ignored counsel and plaintiff's numerous reasonable accommodation requests, defendant brief continues in the same vein and brushes off the heart of this civil action.   Defendant's motion states that plaintiff's reasonable accommodation claim is synonymous with her breach of settlement claim, and since the settlement agreement claim should be dismissed the reasonable accommodation claim should also be dismissed.   Defendant's position has no legal merit and is simply weird.

An employment discrimination claim can be analyzed under many different frameworks such as the disparate impact theory, the McDonald Douglas test, etc.   The failure to prove one theory does not preempt other theories.   The reasonable

accommodation claim and the breach of contract claim are two separate and distinct claims and thus must be analyzed separately, because each of them contain different elements.  It is quite possible plaintiff could prevail on the reasonable accommodation claim, but lose on the breach of settlement claim.    As a reasonable accommodation, plaintiff asked for modified work schedule, an exemption from supervisory duties, and handicapped parking.   Plaintiff first contends the defendant's decision to withdraw the accommodation violated the Rehabilitation Act, because the defendant no longer reasonably accommodates her disability.   To prove this claim, plaintiff must establish that (1) she has a medical condition, (2) the condition substantially impairs a major life activity, (3) the defendant knew of the disability, (4) she is qualified to perform the essential elements of her job, and (5) her requested accommodation is reasonable.   The elements of the breach of settlement claim are completely different.   On the other claim, she needs to prove the parties reached an agreement and the defendant materially breached the agreement.   A plaintiff could prevail on the breach of settlement claim even if the plaintiff is not actually disabled, because proof of disability is not an element of the claim.

Plaintiff says she settled four EEO complaints pending in 2001.   Defendant says the parties did not have a settlement of the four 2001 cases.   Defendant further says plaintiff's 2005 EEO complaint raising new issues should be dismissed, because plaintiff did not settle the earlier and different EEO cases in 2001.    The defendant argues the absence of a prior settlement agreement is an element to a Rehabilitation Act.   No court has ever mentioned this possibility, and defendant's argument is simply ludicrous.

### 17.    Conclusion

For the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

/s/ Michael Beattie____
Michael  Beattie
9502 B Lee Highway
Fairfax, VA 22031
(703) 273-2235 Phone
(703) 273-3440 Fax
mjbeattie@verizon.net

Certificate of Service
This document was sent via electronic filing.

/s/ Michael Beattie_____
Michael Beattie

**Table of Exhibits**

| | |
|---|---|
| Michael Beattie, Esq., Affidavit | Exhibit 1 |
| Jacqueline West, Plaintiff, Affidavit | Exhibit 2 |
| Hand Written Settlement Offer | Exhibit 3 |
| Letter to Confirm Settlement Offer | Exhibit 4 |
| Routing Slips confirming parking in reference to EEO Claim | Exhibit 5 |
| Letter from Dr. Irfan Saeed attesting to P.T.S.D | Exhibit 6 |
| Letter from Dr. Irfan Saeed outlining work conditions | Exhibit 7 |